HALL ˙NEILSON, (UNITED STATES) PLAINTIFF IN ERROR, *v.*
CLARK B. LAGOW, DAVID H. LAGOW, AND ELIZABETH S.
LAGOW, CHILDREN AND DEVISEES OF WILSON LAGOW, DE-
CEASED.

The act of Congress, passed on 1st May, 1820, (3 Stat. at Large, 568,) enacts, " That
no land shall be purchased on account of the United States, except under a law
authorizing such purchase."
Where land was conveyed to trustees, for the purpose of paying a debt due to the
United States, and the highest court of a State decided against a title set up under
that deed, upon the ground that the deed was in violation of the act of Congress,
this court has jurisdiction, under the twenty-fifth section of the Judiciary Act, to
review that decision.
The deed to the trustees being an authority to sell so much of the land as might be
necessary to pay the debt, this was not such a purchase as is forbidden by the
statute. Nor does the act of Congress prohibit the acquisition, directly, by the
United States, of the legal title to land, when it is taken by way of security for a
debt.
Where the trustees purchased, and paid for out of money belonging to the United
States, the equitable title, where the legal title to the land had been previously con-
veyed to them, the acquisition of this equitable title was nothing more than reliev-
ing the land of an incumbrance, and was not such a purchase as was forbidden by the
statute.
Where the gro̶nds of the decision of the Supreme Court of the State are not stated
in the recor̶ , this court will look into the bill of exceptions taken in the court of
original jurisdiction, to see what points were carried up to the Supreme Court, and
whether they were necessarily involved in the judgment of the Supreme Court.
A deed to trustees and their successors in trust to sell and convey a fee-simple abso-
lute, vested such an. estate in them without the insertion of the word "heirs" in the
deed.

THIS case was brought up from the Supreme Court of Indiana,
by a writ of error issued under the 25th section of the Judiciary
Act. It originally stood in the name of Wilson Lagow, the
ancestor of the present defendants in error.

The point involved was the construction of the act of Con-
gress, passed on the 1st May, 1820, (3 Stat. at Large, 568,) which
forbids land from being ·purchased on account of the United
States except under a law authorizing such purchase.

At a preceding term of this court a motion was made to dis-
miss the case for want· of jurisdiction, which is reported in
7 How. 772. A brief history of the case is there given ; and a
more particular one is given in the present opinion of the court,
which renders· any further statement by the Reporter unnecessary.

It was argued by *Mr. Gillet* and *Mr. Crittenden,* (Attorney-
General,) for the plaintiff in error, and *Mr. Judah* for the defend-
ant in error.

The counsel for the plaintiff in error contended, that the
exposition of the statute, given by the court, if true, ren-
ders null the security given by the bank for the debt of
$120,308, and interest due to the United States; renders null

all other. securities taken for the benefit of the United States upon lands, in any form or manner, from their debtors for thirty years last past; and until after that statute of May 1st, 1820, shall be modified or repealed, it annuls the titles of all purchasers of lands under securities given to the United States within that period by their debtors; for the instruction, says the act of Congress, " means any and every mode of acquiring an interest in real estate other than by inheritance ; " " and the interest which the bank then had in the land remained in the bank."

This construction, applied to the facts of the case, has extended a disabling effect of the act of Congress to the uttermost; has strained the disability to a mischievous end, not within the reason, meaning, and intent of the act; has misconceived the purpose of the statute ; has overlooked the settled distinctions between legal titles and requisites, between titles to lands and securities for money, or for the performance of an act deemed valuable in law; it has overturned the established principles respecting deeds of trust executed to assure the payment of money; in fine, it has perverted a statute made to prevent the Secretaries of the Tre sury, War, and Navy Departments, from diverting the moneys appropriated from the objects of appropriation, from spending the public money, and running the government in debt on account of purchase of lands, into a statute to inhibit them from securing and collecting debts due to the United States.

By the deed of trust the trustees had a discretion to demise and lease the whole or any part of the said lands, lots, and houses, until such time or times as a sale or sales thereof could be made, and receive and take the rents and profits ; " also to foreclose the said mortgage and collect the said notes," (to wit, the notes of Willis Fellows, of $7,000, for the purchase of the square lot surrounded by streets, and the mortgage on the square lot to secure the purchase-money, which notes and mortgage were assigned by the deed of trust to the trustees, and the subject of the decree of sale, and sale and deed to the trustees, given in evidence by Neilson;) they had a discretion vested in them, or a majority of them, as to the sales to be made, " for cash, or on credit," " on such terms, and in such parts and parcels, as to them shall seem most advantageous," "retaining thereout, however, their, the said trustees', expenditures, and a reasonable compensation for their trouble and services," and, after paying the debt and interest due by the bank to the United States, to return the surplus to the bank, and also all such parts of the said lands and premises, either in fee or in mortgage, as shall remain unsold," &c. pp. 10, 11, 12.   Such being the terms of the deed, the land must remain in the trustees to enable

them to perform the trust. Therefore, the statute of uses, or statute for transferring uses into possession, did not operate so as to transfer the land, or the title, or the possession, to the *cestui que use*, or *cestui que trust*, the United States. 2 Black. Com. ch. 20, p. 336.

. Upon the deed of trust it is palpable that the United States are not the purchasers of the land, the title is not in them, nor the possession; all that they have a right to is the money arising out of the rents, issues, and profits, and sales, when made by the trustees; the money, to the sum of the debt and interest due from the bank, as mentioned in the deed of trust, was all that the United States had a right to demand and have from the trustees; all that the United States could rightfully demand and enforce in a court of equity, with costs of suit. The land itself the United States could not rightfully demand and have, either by a suit at law or in equity, nor the possession of the land. The deed of trust was but a security for money, not a sale and purchase of the land between the bank and the United States.

That the defendant, Neilson, was subjected to the action of Lagow, and to judgment of eviction from the land, and mulcted in costs, was induced solely by the erroneous construction of the statute given by the court. From such a suit, such a judgment, and such costs, the defendant, Neilson, had the right and privilege to be exempted; he claimed his right, privilege, and exemption, but was deprived of them by the erroneous construction of the statute as contained in the bill of exceptions taken in the Circuit Court. The errors assigned in the Supreme Court of Indiana brought up for review the construction of the statute as contained in the bill of exceptions. The Supreme Court of Indiana affirmed the judgment of the Knox Circuit Court in all things.

Upon the jurisdiction of this court to revise the decision of the Supreme Court of Indiana, as being a case properly within the 25th section of the Judiciary Act, it is sufficient to cite the cases of Crowell *v.* Randell, and Shoemaker *v.* Randell, 10 Peters, 391 to 399, in which fourteen previous cases upon this 25th section are noticed, and the doctrine is reaffirmed: "That it is not necessary that the question should appear on the record to have been raised in direct and positive terms *ipsissimis verbis*, but it is sufficient if it appears, by clear and necessary intendment, that the question must have been raised and must have been decided in order to have induced the judgment."

No such verdict and judgment could have been rendered against the defendant, Neilson, in the Knox Circuit Court; if it had not been induced by the erroneous exposition of the statute of May 1, 1820, given by the Circuit Court; and the affirmance

Neilson v. Lagow et al.

in the Supreme Court of Indiana clearly and necessarily decides that question raised by the assignment of errors, and affirms that erroneous exposition of the statute of the United States.

*Mr. Judah*, for the defendants in error. The question is, Had the bank any interest in the premises after executing the deed of the 1st July, 1822, to the trustees?

And this question resolves itself into these:

1. Was that deed valid?

2. If that deed was valid, did it convey the whole interest of the bank?

1. We assert that the deed was void by virtue of the seventh section of the act of Congress of the 1st May, 1820, in relation to the Treasury, War, and Navy Departments. That section is as follows: — " That no land shall be purchased on account of the United States, except under a law authorizing such purchase."

That this law was understood by the proper officers at Washington to be in force in 1822, and so late as 1824, is proven by a letter of Mr. Pleasanton, then Agent of the Treasury, to the House of Representatives, 8th March, 1824, and printed in the American State Papers. Public Lands, vol. 3, 563. And this, too, is shown by the act of May 26th, 1824, which gives to the officers of the Treasury a limited power to purchase on execution. It is decided that the United States may " enter into contracts not prohibited by law." United States *v.* Tingey, 5 Peters, 115, 128; United States *v.* Bradley, 10 Peters, 343, 359. But where, in the bond or deed, there is a condition or grant which is prohibited, that is illegal and void. United States *v.* Bradley, 10 Peters, 363.

If it is said that the interposition of trustees will take this case out of the statute, we reply,

1. That such a contrivance would be a fraud on the statute. Coke's rule is as follows: — *Quando aliquid prohibetur fieri ex directo, prohibetur et per obliquum.* Co. Lit. 223, b; and see 2 Term Rep. 251–2, quotations from Lord Northington; and Doe *v.* Carter, 8 T. R. 300.

2. We assert that, by the deed from the bank, only a life estate was conveyed to Badollett, Harrison, and Buntin.

Indiana is a common law State. In its courts the distinction between the jurisdiction at law and that in equity is strictly preserved. The present is a common law action, and the question is as to the legal title. The words in the deed, " and their successors," are mere surplusage, not sufficient to pass a fee-simple. Clearwater *v.* Rose, 1 Blackf. 137; Roberts *v.* Forsythe, 3 Dev. 26; 4 Cruise, Dig. 335, 366.

9*

A grant to a natural person and his successors, passes only an estate for life. Co. Lit. 9, v. And hence, if the deed is void, the title remained in the bank, and, on its forfeiture, reverted to the Steam-Mill Company, and passed to Lagow. If the deed is valid, but only passed a life estate, the reversion in fee remained in the bank, reverted to the Steam-Mill Company, and passed to Lagow, and, on the determination of the life estate by the deaths of the grantees, took effect in possession. In either case Lagow has the legal estate, and is entitled to recover at law. If the law, on either of the above positions, is with the defendants in error, we presume this court will decide in their favor. But there is another view of the case which the counsel for the defendant in error is unwilling to abandon.

The Supreme Court of Indiana were required to determine whether a new trial should have been granted, and that depended on the question whether, on the whole case, the verdict was right. This required the solution of one, or of two questions. If the deed only conveyed a life estate, and the grantees were dead, it was not material whether the deed was valid or invalid. We deny that there is any thing in this record to show that the court did determine the validity of the deed. It is true that there are instructions on the record in which this question is made, but it is as true that there are on the record the facts from which the other question does necessarily arise. Both questions might have been determined; but it is usual for appellate courts to pass over questions not necessary for the determination of the case before them. And hence we ask, Is it a " necessary intendment " that the Supreme Court of Indiana did decide both the questions in this case ? For we understand that it must appear to this court, if not expressly, by " necessary intendment," that some question within the jurisdiction of this court did arise and was decided; that it is not enough that such question might have arisen and might have been decided. Smith v. Hunter, 7 How. 738, 742; 16 Pet. 281, 285; 10 Id. 368, 391.

Mr. Justice CURTIS delivered the opinion of the court.

This case comes here by a writ of error to the Supreme Court of the State of Indiana. The record shows that Lagow, the defendant in error, instituted an action of disseisin in a Circuit Court of the State of Indiana, whereby he sought to recover of Neilson, the plaintiff in error, a tract of land described in the counts. The tenant having pleaded the general issue, the case was committed to a jury. At the trial, it appeared that Lagow, together with Nathaniel Ewing, John D. Hay, and Caroline Smith, whose title, if any, Lagow is alleged to have afterwards acquired, were in possession of the demanded premises in the

year 1820, claiming to own the same, and upon this evidence of title he rested his case. The defendant then introduced a deed, bearing date September 19th, 1821, from Lagow, Ewing, Hay, and Smith, conveying to the Bank of Vincennes, the State Bank of Indiana, the lands in controversy, excepting a certain square therein described. He also put in evidence another deed from the bank to Badollett, Harrison, and Buntin, conveying the same lands acquired by the bank under the deed last mentioned, and also transferring to the grantees some equitable title to the square excepted out of that deed. This conveyance is made to the grantees and their successors in the trusts declared by the deed, which are: "until the sale hereinafter authorized shall be made, the trustees, or a majority of them, or their successor or successors herein appointed, or who may hereafter be appointed agreeably to the mode hereinafter directed, shall and may demise or lease the whole or any part of the said lands, lots, and houses, until such time or times as a sale or sales thereof can be made, and receive and take the rents and profits thereof, also foreclose the said mortgages and collect the said notes; in trust nevertheless, for the use of the Secretary of the Treasury of the United States in extinguishment of the debt due by the said Bank of Vincennes to the United States; and upon this further trust and confidence that the said trustees, or a majority of them, and their survivor or survivors herein appointed, or which shall hereafter be appointed, agreeably to the mode hereinafter directed, shall and do, whenever thereto requested by the Secretary of the Treasury of the United States, for the best price that can be got, sell and dispose of, for cash or on credit, on such terms, and in such parts or parcels, as to them shall seem most advantageous, all or any part of the above-described and conveyed lands, tenements, and hereditaments, to any person or persons who may be inclined to purchase the same; and to execute and to acknowledge, in due form of law, deed or deeds of conveyance, unto the purchaser or purchasers, his heir or their heirs and assigns in fee-simple absolute and upon the further trust that they, the said trustees, or a majority of them, or the survivors of them herein appointed, or hereafter to be appointed agreeably to the mode hereinafter directed, shall and do pay and apply, of and every the sum and sums of money or other proceeds to be raised or paid by the rents or sales of the said lands and collections of the said notes, or any part or parts thereof, to the proper use of the United States, until the sum of one hundred and twenty thousand three hundred and eight dollars, which is now agreed upon by the said parties of the first part, of the one part; and the Honorable Jesse B. Thomas, as the legally authorized agent of the United States, of the other part, as the sum now due, together with in-

terest on the said sum of money, at the rate of six per centum per annum until paid; retaining thereout, however, their, the said trustees', expenditures, and a reasonable compensation for their trouble and services, returning and paying the overplus, if any, to the said President, Directors, and Company of the said Bank of Vincennes, their successors or assignees; and also upon this further trust, as to all such parts of the said lands and premises, either in fee' or under mortgage, as shall remain unsold, that they, the said trustees, and their successors, shall stand seized thereof to the use of the United States, until the debt aforesaid shall be fully paid and discharged, and there afterwards to the use of the said President, Directors, and Company, their successors and assigns forever, provided always, and it is hereby expressly agreed and declared by and between the parties of these presents, that in case of the death of either or any one or more of the said trustees hereinbefore named, or of any trustees hereafter to be appointed, it shall and may be lawful, to and for the said Secretary of the Treasury of the United States for the time being, at any time or times thereafter, by deed duly executed, to fill up such vacancies; and the said trustees, when so appointed by the Secretary of the Treasury as aforesaid, shall all of them have the like power and authority to act in the several trusts according to the true intent and meaning of these presents, as fully and amply, to all intents and purposes, as if such new or other trustee or trustees had been actually named herein by the said President, Directors, and Company of the said Bank of Vincennes; and provided, also, that no trustee now appointed, or to be hereafter named and appointed as above directed, shall in any event be liable for any more than he shall receive, nor for any loss or damage not occasioned wilfully and designedly by such trustee, or through his gross and wilful negligence."

Neither the *habendum* nor the grant in this deed contains the word heirs.

The tenant further offered in evidence, proceedings under a judicial sale of the title to the excepted square above mentioned, by which Badollett, Harrison, and Buntin, the trustees under the deed of the bank, became the purchasers of the legal title to that square, which was conveyed to them in fee-simple in 1827, and also introduced evidence to show that he was in possession under the trustees with a contract to purchase of them the entire tract of land demanded.

The plaintiff then put in evidence the record of a *quo warranto* against the bank, by which it appeared that in July, 1822, a judgment of forfeiture was rendered against that corporation, and all its franchises and property seized into the possession of the State; and he offered proof that Badollett, Harrison, and

Buntin purchased the legal title to the reserved square as trustees, and that the money paid by them was from the funds of the United States, supplied by the order of the Secretary of the Treasury, and that all the trustees were deceased when the action was brought.

At the request of the plaintiff the court gave the following instructions :

1. That on the proof of possession as owners by the Steam-Mill Company in 1820, and of the conveyance by the company to Lagow, of June, 1827, Lagow, the plaintiff, is entitled to recover, unless the defendant has shown a better title.

2. That the 7th section of the act of Congress of 1st of May, 1820, forbids " the purchase of any land on account of the United States," unless authorized by act of Congress.

3. That the term " purchase of land " in law, and in the act of Congress, means any and every mode of acquiring an interest in real estate other than by inheritance.

4. That if the government is prohibited from purchasing land directly in its own name, it is also prohibited from purchasing indirectly in the name of an agent or trustee.

5. That if there is any act of Congress or law authorizing the conveyance from the bank to the trustees, it is incumbent on the defendant to show it; and from the fact that the defendant does not set up any such act or law, the jury may infer there is none.

6. That all acts, deeds, and agreements, contrary to the plain language, or even to the policy, of an act of Congress, are void.

7. That if the deed of trust from the bank is contrary to the letter or to the spirit and meaning, or to the policy of the act of the 1st May, 1820, it is void; and the interest which the bank then had in the land remained in the bank.

The court refused to give the following instruction requested by the defendant :

" That it was competent for the Bank of Vincennes to make a deed to trustees for the benefit of the United States, and such a deed is valid and lawful for the purpose for which it was made. To which refusal of the court the defendant at the time excepted."

A verdict having been rendered in favor of the plaintiff, a motion for a new trial was made and refused, and in conformity with the practice of that court, exceptions were taken to such refusal, and having been allowed, the case went by appeal to the Supreme Court of Indiana, which is the highest court of that State. So that the record, presented to the Supreme Court an assignment of three alleged errors, being the same relied on as causes for a new trial in the court below, viz.:

1. For the error of the court in misdirecting the jury.

2. For the refusal of the court to give the instructions to the jury asked by the defendant.

. 3. Because the verdict is contrary to the law and evidence.

The Supreme Court affirmed the judgment of the Circuit Court, and under the 25th section of the Judiciary Act, (1 Stat. at Large, 117,) the defendant has brought the record to this court by a writ of error.

To present intelligibly, the legal merits of the case at one view, and to show what question is here for decision, it should be stated, that by the law of Indiana, as expounded by the Supreme Court of that State, (State *b*. The State Bank, 1 Blackf. Rep.) whatever real property was held by the bank, when its charter was annulled, went to the grantors thereof; that as Lagow and others, whose rights he is alleged to have acquired, were the grantors of this land to the bank, it became material to ascertain, whether the bank had any and what title to the land, when its franchises were seized; that the bank having conveyed by deed to Badollett and others as trustees, before the forfeiture took effect, the validity of that deed was necessarily drawn in question; that the court did in effect decide, that according to the true construction of section 7th of the act of Congress of May 1, 1820, (3 Stat. at Large, 568,) the defendant could take no title under, or through that deed, the same being void by force of that act; and consequently the title remained in the bank and passed to Lagow when the charter of the bank was vacated.

The question, therefore, which arises upon this writ of error is, whether the Supreme Court of Indiana rightly construed the act of Congress, which is in these words: " That no land shall be purchased on account of the United States, except under a law authorizing such purchase."

The deed in question conveyed the land to Badollett and others, in trust to sell so much thereof as might be necessary to raise sufficient money to pay a debt due from the bank to the United States. It is clear this was not in any sense a purchase of land on account of the United States. In the land itself, the United States acquired by the deed, no interest. They were not even clothed with an equitable right to acquire such an interest through the aid of a court of equity; for their title was not to the whole proceeds of the lands, whatever they might be, but only to so much of them as might be necessary to pay the debt of the bank. To this extent both the creditor and the debtor had the right to insist on a sale, and whatever residue of land should remain, was by force of the deed, operating by means of a shifting, or secondary use, to go to the bank upon payment in full of the debt due to the United States. It is true, the deed

Neilson v. Lagow, et al.

contains some language, which, taken by itself, might raise a use, executed in the United States; but it is well settled that such language is controlled, by an intent, manifested in the instrument, to have the legal estate remain in trustees, to enable them to execute a trust which the deed declares; and where, as in this case, the trust is to sell and convey in fee-simple absolute, a legal estate is vested in the trustees commensurate with the interest which they must convey in execution of the trust. Mott v. Buxton, 7 Ves. 201; Leonard v. Sussex, 2 Vern. 526; and the cases in note (f) to Chapman v. Blissett, Cas. Temp. Talbot, 145–150; Trent v. Hanning, 7 East, 99; Doe v. Willan, 2 B. & A. 84.

It is clear, therefore, that these trustees, and not the United States, took the land under this deed, and that the latter acquired no interest in the land as such. This court has applied the same principles to the case of an alien, in Craig v. Leslie, 3 Wheat. R. 50, which settles that a devise of land to a citizen as a trustee, upon a trust to sell the land and pay over the proceeds to an alien, is a valid trust, and the interest of the alien is not subject to forfeiture. See also Anstice v. Brown, 6 Paige, 448. If it were necessary, therefore, we should hold that the act of Congress was not applicable to this conveyance, because by it no title to land was purchased on account of the United States.

But we do not think it necessary to rest the decision of the case exclusively on this ground; for in our judgment the act of Congress does not prohibit the acquisition by the United States of the legal title to land, without express legislative authority, when it is taken by way of security for a debt. It is the duty of the Secretary of the Treasury to superintend the collection of the revenue, and of the Comptroller of the Treasury to provide for the regular and punctual payment of all moneys which may be collected, and to direct prosecutions for all debts which may be due to the United States. 1 Stat. at Large, 65, 66. To deny to them the power to take security for a debt on account of the United States, according to the usual methods provided by law for that end, would deprive the government of a means of obtaining payment, often useful, and sometimes indispensably necessary. That such power exists as an incident to the general right of sovereignty, and may be exercised by the proper department if not prohibited by legislation, we consider settled by the cases of Dugan's Ex'rs. v. United States, 3 Wheat. 172; United States v. Tingey, 5 Pet. 117; United States v. Bradley, 10 Pet. 343; United States v. Linn, 15 Pet. 290.

These cases decide, that the United States being a body politic, as an incident to their general right of sovereignty, have a capacity to enter into contracts and take bonds, by way of se-

curity, in cases within the sphere of their constitutional powers, and appropriate to the just exercise of those powers, through the instrumentality of the proper department, when not prohibited by law, although not required to do so by any legislative act; and we think this same power extends to and includes taking security upon property for a debt already due. The assumption, that Congress intended by the act in question to prohibit the just exercise of this useful power, is wholly inadmissible. In United States *v.* Hodge, et al. 6 How. 279, a postmaster had made a mortgage of property, real and personal, to secure to the Post-Office Department the sum of sixty-five thousand dollars, or such other sum as might be found due on a settlement six months after the mortgage. This mortgage embraced debts already due, and gave time to the debtor. The sureties on his official bond relied on its giving time as discharging them from their obligation. It is manifest that if the mortgage were void there was an end of the case, yet it is nowhere suggested that it was invalid, and it is treated by the court as an operative and effectual instrument. The object of any form of conveyance by way of security is not to acquire the dominion and ownership of land, nor even to invest funds therein, but simply to obtain payment of the debt secured. This is the principal thing to which all others are incidental. It may happen that, by the foreclosure of a mortgage containing no power of sale, the mortgagee may become the owner of the land under the mortgage; but this is not the object which the parties have in view when the mortgage is made, and takes place only because their main end is not attained, and by force of proceedings which ensue afterwards because their main end is not attained. Such a transaction is essentially different from a purchase of land in which the parties have nothing in view but to exchange for the present dominion and title of the land acquired by the purchaser, the money, or other price paid to the seller, and in analogous cases the distinction between these transactions has been recognized. An alien cannot have an action to enforce the title to land which he has taken by way of purchase; but this court has decided, in Hughes et al. *v.* Edwards et ux. 9 Wheat. 489, that an alien mortgagee may have the aid of a court of equity to foreclose a mortgage by a sale, because the debt is the principal thing and the land only an incident. So, though a corporation was by its charter authorized to take mortgages for debts previously contracted, it has been held that a mortgage to secure a debt contracted at the time the mortgage was given, was valid, because the intention of the legislature was only to prevent the corporation from purchasing lands, and not to prohibit it from taking security, in good faith, for the payment of its debts. Sil-

ver Lake Bank v. North, 4 Johns. C. R. 370; Baird v. Bank of Washington, 11 S. & R. 411. It is the opinion of the court, that by the true construction of the act of Congress now in question, the government are not prohibited from taking security upon lands, through the action of the proper department, for debts due to the United States, and that the court erred in giving the act such a construction as to avoid the deed from the bank to the trustees.

The trustees purchased, at a judicial sale, the legal title to the reserved square, and paid for it out of the money of the United States; but they had previously taken in trust, by way of security, an equitable title thereto, and this transaction, though under the forms of a purchase, was, in truth, nothing more than relieving this parcel of land of an incumbrance, so that, when they should sell, they might obtain the entire benefit of the security. The purpose was precisely the same as that which induced the conveyance to them by the bank, and is not a purchase by the United States, prohibited by the act of Congress, for the same reasons that the original conveyance is not within that act.

It remains to consider another view taken in argument by the counsel for the defendant in error. The argument is, that the Supreme Court of Indiana may have affirmed the judgment of the Circuit Court, upon the ground that the deed to the trustees not containing the word. heirs, conveyed only a life estate, the reversion remaining in the bank; and that, as the trustees were all dead when the action was brought, the estate in fee-simple in possession had reverted to the plaintiff, Lagow. It has been settled, by a series of decisions in this court, beginning with Miller v. Nichols, 4 Wheat. 311, and coming down to Smith v. Hunter, 7 How. 738, that it must appear from the record that the highest court of the State passed on one of the questions described in the twenty-fifth section of the Judiciary Act; and different modes in which this may appear by the record are pointed out in Armstrong v. The Treasurer of Athens Company, 16 Peters, 281. It has never been held that the record of the proceedings of the highest court must state in terms a misconstruction by that court of the act of Congress. It is enough that it is an inference of law, from the inspection of the whole record, that the highest court did thus misconstrue an act of Congress, and annul a right or title, otherwise valid, by reason of such misconstruction. Any other rule, confining this court to an inspection of that part of the record which sets out the proceedings of the highest court alone, would be a departure from the general principle, that the whole of an instrument is to be looked at to determine the effect of each part of it, would present for decision an artificial and not a real case; and, inasmuch as

Neilson *v.* Lagow et al.

the highest State court often simply affirms or reverses the judgment below, would, in all such cases, deprive the citizen of the rights secured to him by the Constitution and the twenty-fifth section of the Judiciary Act. And it has been the practice of this court, whenever necessary, to look at the record of the proceedings of the inferior State court in connection with the proceedings of the highest court, in order to deduce therefrom the points decided by the latter. Now the bill of exceptions taken in this case in the Circuit Court shows that the construction of the act of Congress was in question in that court, was misconstrued there, and a deed, under which the plaintiff in error deduced title, was decided to be void by reason of such misconstruction.

This decision being excepted to, was, by the appeal, brought before the Supreme Court; and when that court determined that the judgment of the Circuit Court be in all things affirmed, it must be taken that the Supreme Court affirmed the correctness of the decision thus excepted to, unless it appears by the record that they proceeded on some other ground; and so the inquiry still remains, Whether the Supreme Court did not affirm the judgment of the Circuit Court, upon the ground suggested in argument by the counsel for the defendant in error, that the deed in question conveyed only a life estate, which had terminated before action brought. We cannot make that deduction from this record. It does not appear that the question, what that deed conveyed, if valid, was in any manner raised in the Circuit or Supreme Court; and, assuming that the Supreme Court were not confined on the appeal to points raised in the court below, but might have decided upon any ground shown by the record before them to be tenable, we cannot infer that the decision rested on this ground, because we are of opinion it is not tenable. If it had appeared affirmatively in the record that the Supreme Court did decide that the deed conveyed only a life estate, this court would not inquire into the correctness of that decision; but when put to infer what points may have been raised, and what that court did decide, we cannot infer that they decided wrong; otherwise, nothing would be necessary in any case to prevent this court from reversing an erroneous judgment under the twenty-fifth section of the Judiciary Act, but that counsel should raise on the record some point of local law, however erroneous, and suggest that the court below may have rested its judgment thereon.

Now, on looking into the deed from the bank to the trustees, we find that the grant is to them and their successors, in trust, to sell and convey in fee-simple absolute. The legal estate being in trust, must be commensurate therewith, and will be

deemed to be so without the use of the usual words of limitation. Newhall *v.* Wheeler, 7 Mass. R. 189; Stearns *v.* Palmer, 10 Met. R. 32; Gould *v.* Lamb, 11 Met. R. 84; Fisher *v.* Fields, 10 Johns. R. 505; Welch *v.* Allen, 21 Wend. R. 147. As the execution of the trust required the trustees to have a fee-simple, in order to convey one, we are of opinion that the deed to them conveyed a fee, and consequently we cannot infer that the State Court decided that only a life estate passed by the deed.

The opinion of the court is, that the judgment of the court below should be reversed, and the cause remanded for another trial to be had therein.

This cause came on to be heard on the transcript of the record from the Supreme Court of the State of Indiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Supreme Court in this cause be, and the same is hereby reversed, with costs; and that this cause be, and the same is hereby, remanded to the said Supreme Court for further proceedings to be had therein, in conformity to the opinion of this court.