OLIVER DICKSON & another, executors, *vs.* UNITED STATES OF AMERICA & others.

Suffolk. Nov. 22, 1877 ; Jan. 7. — Aug. 31, 1878. COLT & LORD, JJ., absent.

The will, dated January 7, 1862, of a citizen of this Commonwealth, contained the following clause : " Wishing to contribute my mite towards suppressing the rebellion and restoring the Union, I give and devise the rest and residue of my estate to the United States of America." The residue consisted of land in this and in another state, and of personal property ; and the executors, acting for the benefit of the estate and by the consent of all parties in interest, had managed and received the rents of all such land. *Held*, on a bill in equity by the executors to obtain the instructions of the court, that the devise and bequest was absolute, and that the fact that the rebellion had been suppressed before the death of the testator was immaterial ; that there being nothing in the law of this Commonwealth to prevent the United States from taking by devise, it could so take ; and that, in the absence of evidence, the law of the other state was to be presumed to be the same as our own.

BILL IN EQUITY filed April 4, 1877, by the executors of the will of John Gardner of Boston, who died March 16, 1876, against the United States and the heirs at law of the testator, to obtain the instructions of the court as to the validity and effect of the residuary clause in a will dated January 17, 1862, and admitted to probate April 17, 1876, by which the testator. after making certain legacies and providing for the payment of certain annuities. provided as follows : " Fifth. Wishing to contribute my mite towards suppressing the rebellion and restoring

the Union, I give and devise the rest and residue of my estate, after paying the donation and providing for the payment of the annuities aforesaid, to the United States of America."

All the parties submitted the case to the decision of the court upon the following facts : The residue of the estate of the testator, after payment of debts, legacies and expenses of administration, and providing for the annuities, is of considerable amount, consisting partly of real estate, situated in this Commonwealth and in the State of Iowa, and partly of personal estate. The plaintiffs have, for the benefit of the estate, and with the consent of all the parties in interest, managed the real estate in question and collected the rents thereof, and now have in their hands moneys arising from such rents, for which it is their duty to account, either to the United States or to the heirs at law. *Morton*, J., entered a decree in favor of the United States ; and the heirs at law appealed.

*C. C. Read*, for the heirs at law. 1. The gift to the United States is not an absolute gift. In determining the character of a gift, we must examine carefully the language of the testator, and consider the purpose which he had in mind, the party whom he intended to benefit, and the occasion which prompted him to give. The gift was made during the late rebellion, and its purpose is expressed ; and the fact that this expressed purpose precedes the gift itself clearly shows that the gift is not an absolute gift. The rebellion was suppressed and the Union restored more than ten years before the testator's death ; and of this the court will take judicial notice.

In all cases where money has been so applied to the public debt, or for the benefit of the country, the testator has expressly so applied it. *Thellusson* v. *Woodford*, 4 Ves. 227. *Nightingale* v. *Goulburn*, 5 Hare, 484. *Newland* v. *Attorney General*, 3 Meriv. 684. *Ashton* v. *Langdale*, 15 Jur. 868. *United States* v. *Fox*, 94 U. S. 315.

The immediate purpose and the ultimate object of the testator having been fully accomplished long before his death, and there being no expression of intention to apply the gift to any other purpose, or to make it absolute, the gift fails, and the residue of his estate must go to his heirs at law. *In re Ward' Trusts*, L. R. 7 Ch. 727.

2. The right to dispose of property by last will and testament in this state is not absolute and unlimited. *Fosdick* v. *Fosdick*, 6 Allen, 41. Article 9 of the Amendments of the Constitution of the United States provides that "the enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." And by article 10, "the powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." Among the enumerated powers of the United States, that of taking by devise is not included, and such power cannot be implied. See argument of counsel in 94 U. S. 319. The right of the government to take land by grant, for a governmental purpose, does not include the power or capacity to take by devise. *Jackson* v. *Hammond*, 2 Caines Cas. 337. *Auburn Theological Seminary* v. *Childs*, 4 Paige, 419. *McCartee* v. *Orphan Asylum*, 9 Cowen, 437. *Downing* v. *Marshall*, 23 N. Y. 366, 383, 385. *Levy* v. *Levy*, 33 N. Y. 97, 122. *In re Fox's Will*, 52 N. Y. 530, 533.

*G. P. Sanger & P. Cummings*, for the United States.

GRAY, C. J. The single question in this case is whether the residuary devise and bequest to the United States of America is valid; and upon this question, after full examination of the authorities cited in the learned argument for the heirs at law and next of kin, we can have no doubt.

The introductory clause of this devise and bequest merely expresses the motive of the testator, and in no way defines or limits the purposes to which the property may be applied by the devisee.

In England, bequests for the benefit of the country, or for the payment of the national debt, have always been held valid. *Newland* v. *Attorney General*, 3 Meriv. 684. *Nightingale* v. *Goulburn*, 5 Hare, 484, and 2 Phillips, 594. *Ashton* v. *Langdale*, 15 Jur. 868. While Massachusetts was an English colony, that eminent common lawyer, Serjeant Maynard, gave an opinion that a bequest "to the public use of the country of New England" was a good bequest. 1 Hutchinson's Hist. Mass. (2d ed.) 101, *note*.

The property or money, when received by the United States, must doubtless be applied to public purposes authorized by the

Constitution and laws. But the right to receive money or property, voluntarily contributed, is not a separate power, but a capacity belonging to the United States as a body politic and incident to the right of sovereignty, and to which may be applied the words used by eminent judges in speaking of the implied capacity of the United States to enter into contracts.

Chief Justice Marshall said, " The United States is a government, and, consequently, a body politic and corporate, capable of attaining the objects for which it was created, by the means which are necessary for their attainment. This great corporation was ordained and established by the American people, and endowed by them with great powers for important purposes. Its powers are unquestionably limited ; but, while within those limits, it is a perfect government as any other, having all the faculties and properties belonging to a government, with a per fect right to use them freely, in order to accomplish the objects of its institution. It will certainly require no argument to prove that one of the means by which some of these objects are to be accomplished is contract; the government, therefore, is capable of contracting, and its contracts may be made in the name of the United States." *United States* v. *Maurice*, 2 Brock. 96, 109.

So Mr. Justice Story, delivering the judgment of the Supreme Court upon the question " whether the United States have, in their political capacity, a right to enter into a contract, or to take a bond, in cases not previously provided for by some law," said, " Upon full consideration of this subject, we are of opinion that the United States have such a capacity to enter into contracts. It is, in our opinion, an incident to the general right of sovereignty ; and the United States, being a body politic, may, within the sphere of the constitutional powers confided to it, and through the instrumentality of the proper department to which those powers are confided, enter into contracts not prohibited by law, and appropriate to the just exercise of those powers." " To adopt a different principle would be to deny the ordinary rights of sovereignty, not merely to the general government, but even to the state governments, within the proper sphere of their own powers, unless brought into operation by express legislation. A doctrine, to such an extent, is not known to this court as ever having been sanctioned by any judicial tribunal." *United States* v. *Tingey*, 5 Pet. 114, 128.

In later cases, these views have been repeatedly affirmed, and held to cover the taking of security for debts to the United States. *United States* v. *Bradley*, 10 Pet. 343, 359. *United States* v. *Linn*, 15 Pet. 290, 311. *Neilson* v. *Lagow*, 12 How. 98, 107, 108. *United States* v. *Hodson*, 10 Wall. 395, 407, 408. Upon the same principle, the power to take property by the right of eminent domain for the public use has been declared by the Supreme Court to exist in the United States, not by virtue of any express grant in the Constitution, but as an inherent attribute of sovereignty. *Kohl* v. *United States*, 91 U. S. 367.

In *Cotton* v. *United States*, 11 How. 229, 231, Mr. Justice Grier said, "Every sovereign state is of necessity a body politic, or artificial person, and as such capable of making contracts and holding property, both real and personal." The Smithsonian Institution at Washington was created by the bequest of an Englishman, established by a decree of Lord Langdale as Master of the Rolls, and accepted by act of Congress. *President of United States* v. *Drummond*, cited in *Whicker* v. *Hume*, 7 H. L. Cas. 124, 155. U. S. Sts. July 1, 1836; August 10, 1846. To hold that the supreme government of the country, vested by the Constitution with the power to levy and collect taxes and duties to pay the debts and provide for the common defence and general welfare of the United States, and to borrow money on the credit of the United States, and capable of making contracts and of accepting security for debts, and, in case of necessity, of taking private property by the right of eminent domain, has no capacity to receive a voluntary devise or bequest, is a conclusion that nothing short of an express statute or a binding judicial decision could justify us in adopting.

The decision in *United States* v. *Fox*, 94 U. S. 315, affirming *S. C.* 52 N. Y. 530, by which it was held that a devise by a citizen of New York of real estate in New York to the government of the United States was void, proceeded upon the ground that the law of New York allowed real estate to be devised only to natural persons and to corporations established by the Legislature of that state. That decision has no application to this case. The statutes of this Commonwealth, where the testator had his domicil, and part of his real estate lay, make no restriction as to who may be devisees or legatees; and there is no evidence

before us that any such restriction is made by the law of Iowa, where the rest of the real estate is situated. Gen. Sts. *c.* 92, §§ 1, 2. *Jackson* v. *Phillips*, 14 Allen, 539, 552, 589, 591. *Fellows* v. *Miner*, 119 Mass. 541. *Lorings* v. *Marsh*, 6 Wall. 337, 355. *Ould* v. *Washington Hospital*, 95 U. S. 303.

We have had some hesitation in expressing an opinion upon the validity of this devise so far as it affects rents of real estate, with which executors ordinarily have no concern, and derived in part from lands situated in another state. But as it appears that the executors, acting for the benefit of the estate and by the consent of all parties in interest, have managed and received the rents of the lands there as well as of the lands here, they are obliged, under the laws of this Commonwealth, to account in its courts for all the rents so received. Gen. Sts. *c.* 98, § 8. *Brooks* v. *Jackson, ante,* 307. The sum received by them for such rents being subject to our jurisdiction, we cannot avoid the duty of expressing an opinion on the validity of the whole devise upon which the right to such rents depends.

*Decree affirmed.*