**In the Matter of the Estate
of
CARL NILSSON, Deceased**

No. 122 - 1928

District Court of the Virgin Islands

Christiansted Sub-Judicial District
St. Croix

December 18, 1928

176

178

WILLIAMS, *Judge*

The decedent, Carl August Nilsson, died some time in May, 1927, on one of the estates of the concern in St. Croix known as Bethlehem. His correct full name seems to be, as above stated, Carl August Nilsson, but his surname is variously spelled, such, for instance, as "Nielsen" and "Nielson."

Nilsson came to St. Croix many years ago, that is to say, about 1905, at or about the time Bartrum Brothers sold out their interest in St. Croix to Danish interests. He lived together with his wife, in St. Croix, for many years, and was engaged as sugar boiler by the concern commonly known as Bethlehem. It seems that he was a man somewhere about sixty, who was married, but whose wife had predeceased him. She lived in St. Croix practically all their married life, except when away on vacation or on account of her health. He lived in St. Croix continuously, except for a few trips now and again when on vacation. While in St. Croix he participated in the political life of the island, as the election record reveals that he voted in St. Croix repeatedly, for many years. The records will also disclose that he paid his income tax there. So far as it appears from any accessible information, he has no other home than the one in St. Croix, for his living in St. Croix had all the incidents

of a domicile, that is to say, a real home — a permanent, fixed abode. His residence had, at least, all the appearances of fixity and permanence, and there is nothing from which anyone could gather that he ever intended to change the St. Croix residence, except, or even, at a very indefinite time in the future. So far as I have been able to ascertain, there is nothing that his residence in St. Croix lacked to make it a domicile, or a home, that would be ordinarily incident to a domicile, that is to say, a home. His work was there; he lived and voted there; paid his income tax there; and finally died there, and left no evidence — so far as I have been able to ascertain — of any intention of having a domicile elsewhere. I do not say, however, that it is not possible that he might have had some remote or indefinite idea, in the deep recesses of his mind or heart, of returning to either Denmark or Sweden, very probably the latter, if any such intention existed at all; because he was a Swedish subject at the time of his arrival, and he did nothing to change that nationality during his existence in St. Croix, and, whatever his domicile may be, his nationality does not seem to be questioned. When he died the matter was taken up through the Swedish Consul, by a brother, Charles Nilsson, Fridehem, Ystad, Sweden. As a result, letters of administration were issued and the case proceeded with, and has been now brought to conclusion and submitted for adjudication.

His estate physically present in St. Croix consisted of household furniture and other personal effects; a little cash found in his home; a deposit in the National Bank of the Danish West Indies, in St. Croix; a salary; and several Swiss bonds; and, in addition thereto, the administrator made known to the Court that there is on deposit with the Skandinavirke Kreditaktiebologet, at Ystad, Sweden, as shown by its statement of December 31, 1926, Kroner 15,203.88, which is equal to $4,222.75 local currency; and

on deposit with the same institution in Skaanke 5 1/2 per cent bonds, as shown by its statement of August 30, 1926, Kroner 10,000, which is equal to $2,777.77 local currency; and on deposit with the Landmandsbanken, Copenhagen, Denmark, as shown by its statement of December 31, 1926, Kroner 14,821.48, which is equal to $4,117.07 local currency — total local currency $11,117.56.

It appears from the original record that he left surviving him, as next of kin, or heir, the said Charles Nilsson, who is, apparently, a resident as well as a subject of Sweden. Subsequent to the submitting of the case, however, the administrator, through his attorney, has filed a letter asking that the record be amended so as to include J. E. Nilsson, and Mrs. Olga Hellstrom, widow, all residing in Sweden. The record may be amended as prayed, as the administrator seems to have proper authority and sufficient identification of the parties concerned to warrant the correction.

In filing his petition for adjudication the administrator propounded two interrogatories in the following language:

"(1) The decedent died in St. Croix, where he had lived for many years. He left bank deposits in Denmark and Sweden of the value of $11,117.56 local currency. Decedent was a Swedish citizen. Is this part of the estate constructively here in charge of the Administrator and the same taxable here?

"(2) If the funds abroad are constructively here in the custody of the Administrator, and taxable here, then is the Administrator entitled to compute his fee on same and amend the final account accordingly?".

In a separate paper filed by the attorney for the administrator, some question as to the domicile of decedent at the time of his death has been suggested. Therefore, the third question is:

(3) Was the said deceased Nilsson domiciled in St. Croix at the time of his death?

This question is also impliedly suggested in subparagraph 1. It is obvious that the last question should be taken up first, and the other two should follow in the order given.

In view of the fact that the interested parties are non-residents, and that it is probable that they, or any solicitor that might be employed, would not have access to an American law library, I deem it advisable to enter into a rather extended discussion of the terms DOMICILE and RESIDENCE, as well as the other questions involved.

A general discussion of those two terms is to be found in 9 Ruling Case Law (commonly referred to as R.C.L.), beginning at page 538, and I shall quote copiously from it rather than from cases, as it gives a full and very fair general discussion of this subject of "domicile" and kindred words.

█ In section 2, at said page 538, it is declared, that — "The term 'domicil' in its ordinary acceptation means a place where a person lives or has his home.

"In a strict legal sense that is properly the domicil of a person where he has his true, fixed, permanent home and principal establishment, and to which place he has, whenever he is absent, the intention of returning. In a sense domicil is synonymous with home, or residence, or 'the house of usual abode.' "

█-█ As to the distinction between RESIDENCE and DOMICILE that authority, at page 539, makes his observation: "It is customary to distinguish between residence and domicil, on the ground that any place of abode or dwelling place constitutes a residence, however temporary it may be, while the term 'domicil' relates rather to the legal residence of a person or his home in contemplation of law. As a result one may be a resident of one jurisdiction although having a domicil in another. For example, a foreign minister ac-

tually resides and is personally present at the court to which he is accredited, but his legal habitancy or domicil is in his own country. Domicil does not depend upon residence alone, but upon a consideration of all the circumstances of the case. That a person stays at a place is prima facie evidence that he is domicilled there; but, of course such fact may be explained, and the presumption arising therefrom rebutted. 'Residence,' however, as a legal term, is something more than the mere actual presence in a locality, even where it is not equivalent to domicil. For example, a mere temporary absence of a few weeks will not constitute a person a non-resident, if at the time of departure there was the intention of returning at the expiration of that period; nor will his mere presence in a place, unaccompanied with any intention to remain there for any length of time, constitute a residence."

■ The words "residence" and "domicile" are many times used interchangeably, as being synonymous, as also is the word "inhabitant." City of New Albany v. Meekin, 56 Am. Dec. 532; Story's Conflict of Laws, 8th Ed., 61; note 2, 9 R.C.L. 540.

■ - ■ In discussing the nature and acquisition of domicile, that authority, 9 R.C.L. (continuing at page 540, section 5), states the general law on the subject, thus: "The first requisite of domicil is a habitation, place of abode, or dwelling place. In general terms, one may be designated as an inhabitant of that place which constitutes the principal seat of his residence, of his business pursuits, connections, attachments, and of his political and municipal relations. All the facts and circumstances which would tend to fix the domicil would alike tend to establish the habitancy, so that if there be any distinction between the terms it is of no practical importance. Where his family lives is prima facie a man's domicil. Actual residence, however, with the purpose and intent that it shall be legal and permanent,

183

fixes the domicil without regard to the place of residence of the family. The place of a man's dwelling house is regarded as his domicil, in contradistinction to any place of business, trade or occupation; and so if he has more than one dwelling, that in which he sleeps or passes his nights will govern on the question as to which is his domicil . . . Of course long-continued habitation is an important circumstance in determining the question of domicil, in the absence of other evidence showing the avowed intention; but no definite period of time is necessary to create a domicil, unless the law so provides. One day is sufficient provided the animus manendi exists, and it has even been held that in a case where the point of destination is not reached, domicil may shift in itinere, if the abandonment of the old domicil and the setting out for the new are plainly shown. The habitation need not be continuous or uninterrupted, for temporary absences do not affect the domicil."

And, then, at page 543, section 6, it is stated, that — "Some times the intention of the person has been definitely expressed and can be proved by his written or spoken declarations. In other cases the conduct has been such as to show the intention. In general, all the circumstances of the particular case should be taken into consideration in determining the person's intention. However migratory the habitation may be, and however difficult on that account may be the proof of the intent to remain, yet if proved, residence combined with intention to remain will constitute domicil. But intent alone, without actual residence, cannot determine the domicil; and, conversely, a domicil once established cannot be given up by merely intending to do so, and without actual removal. Therefore, one who has resided and carried on business for years in one jurisdiction cannot for his own purposes insist that his domicil is in another. The facts may belie the expressed intent to retain a domicil actually given up."

184

██ ██ Then, at page 556, section 21, under the sub-head "Evidence", that phase of the matter is developed, and, in doing so, it is there said: "In actions involving the question as to domicil it is evident that the general rules of evidence apply. When one has changed his place of abode, and the question arises whether he intended to change his domicil, all his acts and conduct which fairly indicate his purpose in that particular within a reasonable time before and after the event may be put in evidence. This is evidence of his intention, and as such is competent, although it may not be part of the res gestae. Accordingly, on the question as to the establishment or abandonment of domicil, it is proper to introduce proof as to the payment of taxes in one jurisdiction rather than in another, and to show the exercise of the right of suffrage in a certain jurisdiction, and generally to prove the declarations as to domicil, made by the party whose domicil is in controversy. Evidence as to the intention in making a home or as to the place of domicil or as to the purpose in leaving a place is admissible. And so abandonment of domicil as a matter of fact may be established by evidence that one left the state of his birth at an early age, returned only once on a visit and for many years up to his death resided and carried on business in a foreign country. From such facts the intention may very properly be implied. The conduct and the various acts of the party are not, however, conclusive of the question, but are regarded rather as circumstances from which the jury in its discretion may find the fact."

██ -██ And, in section 22, page 557, of that work, it is declared that — "Domicil is presumed, prima facie, to be at that place where the party is shown to be, or where he is resident. This presumption controls unless rebutted by evidence determining his domicil in some other place at that time. It follows that the burden of proof is on the party who claims that the domicil has been changed. Con-

tinuous residence for a long period of time in a given locality raises the presumption that there was the intent to remain and become domicilled there."

■ And, then, finally, in section 23, page 558, in discussing Declarations and Conduct, it is said, that — "The intention of the person removing is competent to be proven as an independent fact, and anything which tends to show his intention in making the change may be introduced, if it is free from objection in other particulars. In this connection it has been held that the declarations of the party himself, where he can have no object or inducement to deceive those to whom such declarations are made, are the best evidence of his intention to make his actual residence his permanent residence also. But it is manifest that where acts unaccompanied by declarations concur with long-continued residence they furnish as satisfactory evidence of intention as the express declarations of the party to that effect. And if a party has two residences, that will be esteemed his domicil which he himself selects or deems to be his home, or which appears to be the center of his affairs, or where he votes or exercises the rights and duties of a citizen. Where, however, the declaration of a party are inconsistent with his acts, they are not considered as a high class of evidence; and the jury in such case may accord such declarations but little if any weight. It has been held that a change of residence, clearly manifested as matter of law by acts, cannot be defeated by subsequent declaration of the person that he did not intend his acts to have that effect."

■■ In the same general work, at page 274 of Volume 26, dealing with Taxation, domicile, for the purpose of taxation, has been defined, as it were, as follows: "The domicil of a person is the place which constitutes the principal seat of his residence, his business, his pursuits, his connections, his attachments, and of his political relations.

186

It embraces the fact of residence at a place with the intent to regard it and make it a home and to live there for an indefinite time. One may have his domicil in a city or town without owning or leasing a house therein."

And then, again, at page 276, section 243 of the same volume, this further observation is made: "An intent to return at a remote and indefinite period will not, however, control an actual dwelling at a different place with all the characteristics of a permanent home and place of abode. If a change of domicil has been actually effected, a return to the original place of domicil for a temporary purpose does not affect the validity of the change."

It will thus be seen that, when dealing with taxation, the words "domicile" and "residence" are to be given their generally accepted significance, though, in other matters, a distinction is some times drawn.

I have quoted extensively from this authority — which is one of the latest, constantly used, and well known encyclopedic works — rather than to take the various adjudicated cases and quote therefrom; and this, for two reasons: First, because it is unreasonable to expect any ordinary foreign jurisdiction to have possession of all the United States and State reports; and, Secondly, because it epitomizes the various authorities on this subject as well as others. The quotations above made, however, are thoroughly supported and buttressed by authorities taken from all over America, including the Supreme Court of the United States, and would be taken anywhere in American jurisdictions as giving a general, and even thorough, discussion on any subject to be found within it, worthy of acceptance by any court or interested party.

Now, applying the principles as set forth above, can there be the remotest question of Nilsson being domiciled anywhere but in St. Croix? He was environed by all the elements that go to make up domicile. He lived in St.

Croix with his wife, continuously, from about 1905, except when they were on vacation or out of the island for medical treatment, or the like; he paid his income taxes there; voted there; and returned there whenever he went off on any sort of a trip. There is nothing to show that he maintained any other establishment whatsoever. It is not pretended even that by these temporary absences on vacation any home was established, or existed elsewhere. It appears that his home was clearly and definitely established in St. Croix, and as clearly and definitely established as any residence — used in the sense of "domicile" — or domicile could be established. There is not one single element missing so far as the facts environing him disclose. What constitutes domicile has been rather thoroughly discussed in several other cases in this jurisdiction, and the conclusion here made is entirely consonant with the findings in those cases. See: The Matter of the petition of Charles Stanley Mayhew, for naturalization, Christiansted Sub-Judicial District, No. 1 - 1927, decided April 14, 1927; The Matter of the petition of Arthur Osborne Boreham, for naturalization, No. 14 - 1927, St. Thomas and St. John Sub-Judicial District; and the Matter of the petition of William Thomas Miller, for naturalization, No. 6 - 1927, same Sub-Judicial District, decided December 6th, 1927. It would seem that a jury would inevitably have to find that said Nilsson was domiciled, that is to say, had his permanent and fixed home, in St. Croix; and I so find and decide.

The next question is whether or not the deposits in Denmark and Sweden are constructively within this jurisdiction for purposes of taxation generally, and inheritance taxes particularly. For the reasons above stated I shall pursue the same course in disposing of this question, which divides itself into two parts: First, as to the general taxation of personal property; and, Secondly, as to inheritance

taxes on personal property, and particularly of the character of the deposits in Sweden and Denmark.

■ In 26 Ruling Case Law (commonly referred to as R.C.L., as above stated), page 273, section 241, what is known to us as an historical fact, as well as an elementary legal principle, in our jurisprudence, is stated, thus — "Mobilia sequuntur personam was a well established maxim of the common law, and the situs of personal property of every description, wherever it was actually kept or located, was held to be at the domicile of the owner and the property was subject to the jurisdiction of the owner's sovereign."

The authority cited for this statement is St. Louis v. Wiggins Ferry Co., 11 Wall. 423, 20 L. Ed. 192, same being a decision of the Supreme Court.

■ "The principle was applicable to the taxation of personal property and it was for many years the universally accepted rule that personal property was taxable at the domicil of the owner. While certain exceptions and qualifications to the rule have been developed in recent years, it is still the basic principle on which the taxation of personal property rests, and the law of taxation of personal property depends largely upon the question of domicil, for it is still held that personal property unless it has acquired a definite situs in another state or unless other provision is made by statute is taxable to the owner in the city or town in which he lives and has his domicil." 26 R.C.L. 274.

■ ■ Whatever limitation there might be, as to the taxation of tangible personal property not actually within the jurisdiction of the owner's domicile, it cannot even now be denied that — "The maxim mobilia sequuntur personam embodies the general principle in relation to situs for the purposes of the taxation of intangible personal property, such as bonds, stocks, and the like; and while such property may sometimes acquire a situs for taxation in a state other than that of the owner's domicil, and may, perhaps,

lose its situs in the state of the owner's domicil, still it is the general rule in the absence of controlling circumstances to the contrary that the situs of intangible property for the purposes of taxation is the state of the owner's domicil. There is an obvious distinction between tangible and intangible property, in the fact that ordinarily there is no method by which the existence or ownership of intangible property can be ascertained in the state of its situs, no way by which the owner can be reached by process in a state other than that of his domicil, or the collection of the tax otherwise enforced. Conceding, however, that in some cases intangible personal property may acquire a situs other than at the domicil of the owner, it does not follow and it has never been authoritatively determined that the acquisition of such situs and subjection to taxation by virtue of it precludes the state of the owner's domicil from taxing the same property also." 26 R.C.L. 283 et seq.; Kirtland v. Hotchkiss, 100 U.S. 491, 25 L. Ed. 558; Covington v. Covington First Nat. Bank, 198 U.S. 100, 25 S. Ct. 562, 49 L. Ed. 963; Fidelity, etc., Trust Co. v. Louisville, 245 U.S. 54, 38 S. Ct. 40, 62 L. Ed. 145.

 In State Tax on Foreign Held Bonds, 15 Wall. 300, 21 L. Ed. 179, it·was held, that — "Bonds, mortgages and debts generally have no situs independent of the owner of the domicil [domicil of the owner]."

And in Buck v. Beach, 206 U.S. 392, 27 S. Ct. 712, 51 L. Ed. 1106, it was held that this is undoubtedly true· in a case of ordinary promissory notes. See also 26 R.C.L. 284, section 249, where it was said, that — "A distinction has been sometimes taken between bonds and other specialty debts, with respect to which the paper upon which the instrument is written is for some purposes taken as constituting the debt itself, and other classes of debts, including promissory notes, and is apparently true in the case of bonds issued by private corporations. A debt is none the

less property of an intangible nature, and taxable at the domicil of the creditor because its amount and maturity are set forth in a bond, even if the bond is kept or deposited in another state. The bond is only evidence of the debt and not the debt itself." Kirtland v. Hotchkiss, supra, sustaining 42 Conn. 426, 19 Am. Rep. 546.

 At page 287 of the said volume, 26 R.C.L., section 252, under the subcaption of "Situs of Bonds, Notes, and other Debts," it is asserted, that — "Under ordinary conditions a debt is a species of intangible personal property which is taxable in the state in which the owner resides and no where else ... The same rule that applies to the taxation of debts prevails as to notes and other negotiable instruments. They follow the domicil of the owner or creditor and are taxable there. This principle applies to corporations as well as to natural persons, and to bonds as well as to simple contract debts. The debts of a corporation, like those of an individual, are the property of its creditors and have no locality severed from the person to whom they are due."

In addition to a number of State Courts' decisions the above statements are sustained by Kirtland v. Hotchkiss, supra; State Tax on Foreign Held Bonds, supra; Murray v. Charleston, 96 U.S. 432, 24 L. Ed. 760.

 Under the subject of "Shares of Stock in Corporations," 26 R.C.L. 289, section 254, it is said, that — "Shares of stock are a species of intangible personal property which may be taxed to the individual owner in the state in which he resides, whether the corporation is domestic or foreign, even if the corporation does no business and owns no property in such state. Taxing shares of foreign corporations when owned by the inhabitants of the state is not objectionable as discriminatory because in the case of domestic corporations it is the property of the corporation and not the shares which are taxed." Sturgis v. Carter, 114 U.S. 511, 5 S. Ct. 1014,

191

29 L. Ed. 240; Kidd v. Alabama, 188 U.S. 730, 23 S. Ct. 401, 47 L. Ed. 669; Wright v. Louisville, etc., R. Co., 195 U.S. 219, 25 S. Ct. 16, 49 L. Ed. 167; Darnell v. Indiana, 226 U.S. 390, 33 S. Ct. 120, 57 L. Ed. 267; Hawley v. Malden, 232 U.S. 1, 34 S. Ct. 201, 58 L. Ed. 477; Denver v. Hobbs Estate, 58 Colo. 220, 144 Pac. 874, and many other cases cited in the footnote sustaining the above quotation.

As to the situs of bank deposits, it is, at page 291 (26 R.C.L.), section 255, said, that — "In some states a bank deposit is considered as money for the purposes of taxation and thus taxable in the state in which it is kept, without regard to the question of business situs. Liability to taxation in the state in which the money is kept does not preclude taxation in the state of the depositor's domicil. A bank deposit may be taxed to the depositor in the place where he lives even if it is also lawfully taxed to him in the place where it is deposited, without violating any provision of the federal constitution." In re Houdayer, 150 N.Y. 37, 55 A.S.R. 642, 34 L.R.A. 235, and note to 36 L.R.A. (n.s.) 300; Fidelity etc. Trust Co. v. Louisville, supra.

Thus, it will be seen, that irrespective of any controversy that may exist as to the right of the state of the owner's domicile to tax tangible personal property which is not actually within its jurisdiction, there can be no question about the taxation of intangible property at the owner's domicile, even though those assets be in the form of stocks or bonds of foreign corporations, bank deposits, promissory notes, or other evidences of indebtedness.

In Frick v. Penn, 268 U.S. 473, 45 S. Ct. 603, 69 L. Ed. 1058, decided June 1, 1925 — which is one of the latest cases dealing with this subject — it was held that tangible personal property having an actual

192

situs in a particular state was taxable exclusively in that state, regardless of the domicile of the owner, but it adhered to the old rule as to intangible personal property. To the same effect see Blodgett v. Silberman, 277 U.S. 1, 48 S. Ct. 410, 72 L. Ed. 749, another case recently decided by the Supreme Court of the United States — the court of last resort in the United States. The reason for the modification of the maxim mobilia sequuntur personam, so far as tangible personal property is concerned, has been due to the change in the actual facts and condition which gave rise to that maxim. At the time of its formulation and adoption as a part of the common law of England it was a fact that the personal property generally followed the person. There may have been some few exceptions, but the exception proved the rule in that as in many other cases. In this day such is not the case. It is a common thing for one to own property of a personal nature, in many jurisdictions and even in foreign countries. When the reason for the rule fails, say the courts, the rule itself should fail, or be modified to meet the changed conditions. This change has been finally adopted by the Supreme Court of the United States, as shown by the two cases above referred to. The rule as to intangible personal property has been adhered to, as above stated, for various reasons, given by the various courts, but it has been adhered to nevertheless.

From the above authorities it must be concluded that property such as deposits in Denmark and Sweden is personal property of an intangible nature, and is generally taxable at the owner's domicile, even though it may have been taxed in Denmark and Sweden. The rule mobilia sequuntur personam applies to them. Therefore, they are legally presumed to have their situs at the place of the domicile of the owner or creditor, as in the case of bank deposits, promissory notes, and the like.

193

■-■ The same principle of taxation applies in regard to inheritance taxes. In 26 R.C.L. section 178, page 209, it is declared that — "The state has undoubted power to impose a succession tax in respect to all property upon which it has power to impose an ordinary tax, but in addition thereto it has power to impose a succession tax in respect of certain sorts of intangible property upon which it cannot impose such ordinary tax." And, then, in section 179, page 210, of the same volume, it is further remarked, that — "Among the classes of personal property the succession to which it has been held may be taxed in the domicil of the owner, notwithstanding that the property itself is kept outside the state, are unsecured debts, deposits in savings banks, bonds or notes secured by mortgage of real estate situated in another state, bonds permanently kept outside the state of the owner's domicil and shares of stock in a foreign corporation." See also Frick v. Penn., supra, and Blodgett v. Silverman, supra, and see note to City of New Albany v. Meekin, 56 Am. Dec. 536, in which some English as well as American cases are referred to.

The above leads to the inevitable conclusion that the said deposits in Sweden and Denmark are subject to the inheritance tax, which, in this instance, the parties being collaterals, is four per cent. See Ordinance of 29th September 1876.

■ Now, as to the matter of compensation to be allowed the administrator, section 11 of chapter 77, Title III, page 271 of the Code (1921; 15 V.I.C. § 569 note), states that — "The compensation provided by law for an executor or an administrator is a commission upon the whole estate accounted for by him, as follows:". Then follows the method by which the commission is to be calculated, which is unimportant for the purposes of this opinion. That section concludes by stating that a further commission might be allowed for extraordinary or unusual service that might be

rendered in discharge of the trust. This, of course, is equally inapplicable to the present case. The language of section 11 seems to leave no matter open for construction, as it seems perfectly plain that the commission to be allowed is upon "the whole estate accounted for by him," the administrator. The estate accounted for consists as well of the deposits in Denmark and Sweden as of the various items of property in St. Croix.

While the administrator may have had little trouble in connection with the estate no cognizance of such circumstances is taken by the statute, albeit it does make provision for extraordinary or unusual services.

The administrator is, therefore, entitled to a commission on all the property involved in the adjudication.

The estate is to be divided equally between the three parties above named, namely, the two brothers Charles Nilsson and J. E. Nilsson, and one sister, Mrs. Olga Hellstrom, widow, as the decedent died intestate.

An adjudication prepared in accordance herewith will be signed upon presentation.