RICHARD S. DOYLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 82713.   Promulgated February 9, 1938.

*Richard S. Doyle, Esq.*, pro se.
*P. A. Sebastian, Esq.*, for the respondent.

**328**

OPINION.

HARRON: The issue is whether $10,500 received by the petitioner in the year 1932 constituted capital gain or ordinary income. Petitioner contends that he erred in reporting in his gross income the amount of $10,500 as ordinary income along with other fees for professional services, so that petitioner alleges that the deficiency determined does not represent his true tax liability. During the taxable year petitioner had capital net losses aggregating $14,252.93. In his petition, petitioner claims that the $10,500 received in 1932 represents a capital net gain which should be applied against his capital net losses pursuant to section 101 of the Revenue Act of 1932. Respondent denies that the $10,500 received was capital net gain.

The petitioner claims that the $10,500 constitutes capital gain because it resulted from the "sale" of a "capital asset", the statutory definition of which is "property held by the taxpayer for more than two years" (section 101 (c) (8), Revenue Act of 1932). He claims that the property sold was a part of his "interest in a partnership", and that he had owned his interest in the partnership for more than two years. Even though the actual assignment purports to convey and release his proportionate share in specific claims for fees which were in litigation subsequent to the dissolution of the partnership, he argues that the assignment could only have the effect of conveying his share in the surplus of the partnership which might arise from the collection of those fees, since as a matter of general partnership law the partners do not own undivided interests in the specific assets of the firm but only have a right to proportionate shares of the earnings and surplus of the partnership, citing *Fourth National Bank of the City of New York v. New Orleans & Carrollton Railroad Co.,*

78 U. S. 623; *Blodgett* v. *Silberman*, 277 U. S. 1; *United States* v. *Kauffman*, 267 U. S. 407; *Helvering* v. *Walbridge*, 70 Fed. (2d) 683; and other cases. He relies on the case of *Dudley T. Humphrey*, 32 B. T. A. 280, which applied this doctrine of partnership law to a sale by a partner of his entire interest in a partnership which had been held for more than two years, and argues that the same rule should apply in the case of an assignment of only part of a partner's interest in the partnership. He argues in reply to the respondent that dissolution of a partnership does not change the nature of the partner's interest so long as the partnership is in process of liquidation. He claims that the case of *Helvering* v. *Smith*, 90 Fed. (2d) 590, is distinguishable from the case at bar because in that case the transaction upon the retirement of a partner was held not to constitute a "sale" and furthermore the partner involved there had made no capital contribution to the partnership. Although urging primarily his position that a partner has no claim to specific partnership assets and therefore that petitioner merely sold part of his "interest in a partnership", the petitioner argues alternatively that even if the petitioner be assumed to have had an individual interest specifically in the two Woolworth cases those two cases were partnership assets purchased by the firm for $5,500 in July 1929, more than three years prior to his assignment, and therefore the profit realized constitutes capital gain to the petitioner under the statute.

We do not agree with all of the contentions of the petitioner and conclude that the $10,500 received by him in 1932 constitutes ordinary income rather than capital gain. We will discuss first the contention last mentioned above to which most of the respondent's argument is addressed. The respondent contends that at no time did the Woolworth cases become capital assets. He argues that they were not capital but merely income items; that if fees for the services rendered therein had been received in the ordinary course of collection they would have constituted ordinary income items, and that neither the assignment of the claim for fees nor the fact that suit was filed thereon served to convert the claims or the cases into capital assets. He further argues that the claims for fees were not held for more than two years since they did not come into existence until the tax refunds were approved by the Commissioner of Internal Revenue in December 1930 and paid by checks which were received in January of 1931.

These arguments thus summarized present several questions both of fact and of law. It may be noted at the outset that there appears to be a factual misstatement in the petitioner's argument that the partnership paid $5,500 for the Woolworth cases when it was organized in July 1929. That was only the valuation placed on the cases by the members of a prior partnership for the purposes of

liquidation of that partnership. That sum was not paid for those cases by the new partnership; the new partnership only repaid to Hamel and the petitioner the $30,000 which they had paid out as a part of the settlement of the prior partnership and these two individuals turned over to the new partnership approximately 125 cases in all with no particular values assigned to any of them. Furthermore no sum was ever set up on the books of either partnership purporting to assign an asset value to any of these cases.

A clear distinction must be drawn between the Woolworth cases themselves and the claims for fees arising out of them. The cases themselves, before any right to fees arose, were merely contracts of employment which only gave the partnership the right to perform services and to receive compensation which in the 1918–1919 case at least was contingent on the success of the refund claims. A mere contract of employment has been held not to be a capital asset even though it be assigned after being held for more than two years. *Thurlow E. McFall*, 34 B. T. A. 108. Therefore the contracts here, or the "cases" as they are referred to, could not become capital assets no matter how long they were held. When the refunds were made rights of a different nature arose, namely, claims for fees. It was these latter rights rather than the contracts of employment which were assigned. To determine whether the property assigned was held for two years therefore depends on when the claims for fees arose rather than on when the contracts of employment were acquired by the partnership.

Without passing on the question of whether in any event a claim for compensation for services which has accrued can become a capital asset by being held for two years after its accrual, it is of course true as respondent argues that the mere fact that the claim is assigned or that suit is instituted for its collection does not convert it into a capital asset. The nature of the claim remains the same. The only significant inquiry is whether as required by the statute the claim was held for more than two years. It is apparent as the respondent argues, that the claims in the instant case were not held for as much as two years after they accrued before they were assigned. The assignment occurred on December 18, 1931, although payment for that assignment was deferred until June 17, 1932.

The 1918–1919 case had definitely been taken on a contingent fee basis so that no claim for fees in any amount arose until the refunds were made. The refund checks were issued on December 30, 1930, and received by the Woolworth Co. in January 1931, both less than two years before the assignment of petitioner's interest on December 18, 1931. There is no evidence in the record as to what fee understanding existed regarding the 1920–1926 case. From the fact that there was a dispute as to whether the petitioner's partnership through

Hamel had even been *employed* in that case, it may be inferred that there was no very definite understanding regarding fees. In such case if the partnership established that it was employed in the 1920–1926 matter it would presumably be entitled to "reasonable fees." The claim for reasonable fees would certainly not arise before the work on the case was completed which was in October of 1930 which was less than two years before the assignment of the claim by petitioner on December 18, 1931.

It is clear that there is no significance in the fact that work on the 1918–1919 case was completed in January of 1930 since that case was on a contingent fee basis and the completion of the work gave rise to no claim for a fee. It was only when that work was crowned with success in the form of a refund claim that any claim for a fee arose. It is also immaterial that the appropriate division of the Bureau of Internal Revenue made recommendations for the allowance of refunds in both cases about the middle of January of 1930. It is apparent that those recommendations had no finality from the fact that the Joint Congressional Committee to which they were directed required a great deal of additional work on the claims for the years 1920–1926 before giving its approval in October of 1930. None of the Woolworth refunds were listed on the Commissioner's schedule of overassessments until December 6, 1930, when they were approved by the Commissioner, and it is the signing of the schedule of overassessments which gives finality to refund claims. See *United States* v. *Wurts*, 91 Fed. (2d) 547. But even if the recommendations made in January 1930 were considered final, that date was not as much as two years prior to the assignment on December 18, 1931. The fact that payment on account of the assignment was delayed until June 17, 1932, would not alter the time for which the claims were *held*, which is the determining factor under the statute. Thus under any view of the question the claim for fees did not come into existence as much as two years prior to the petitioner's assignment of his interest therein, wherefore the claims did not constitute capital assets within the statutory definition.

We come now to a consideration of the petitioner's chief claim that his assignment of December 18, 1931, pursuant to the agreement of the same date did not have the legal effect of transferring his interest in claims to specific *fees* but rather his interest in that part of the *surplus* of the partnership which might arise from collection of those fees. From this he argues that it constituted a conveyance of a part of his "interest in a partnership" which, like the conveyance of a partner's entire interest considered in the case of *Dudley T. Humphrey, supra*, constitutes a capital asset if his interest in the partnership has been held for over two years, irrespective of how long the particular assets of the partnership have been held.

At the outset it must be noted as appears in our findings of fact that neither the assignment nor the contract to assign took the *form* of assignments of a part of a percentage interest in a partnership but rather purported to assign the petitioner's interest in specific fees which were the subject of litigation. As stated by the petitioner in his brief:

By the agreement of December 18, 1931 petitioner intended to sell, transfer and assign to Mr. Hamel all of his right, title and interest in the claim against Rusch & Jackson in the suit instituted for the $50,000 which had been attached in the hands of Davies, Auerbach & Cornell, and to waive and release to Mr. Hamel all of his interest in the suit pending in the Supreme Court in Newark, New Jersey, against Woolworth Company, which he considered of no value.

The petitioner claims however that irrespective of the *terms* of the assignment its legal effect could only be the conveyance of his proportionate share in the surplus of the partnership which should arise upon collection of these fees and that this is the equivalent of an assignment of part of his "interest in a partnership."

It is true that as a matter of general partnership law a partner's interest in the partnership is not an interest in specific assets but only in the surplus which will arise upon liquidation of those assets. It also appears to be true that dissolution of the partnership does not of itself serve to change the character of the partner's interest into an interest in specific assets so long as the assets are not liquidated or distributed. However, the partners clearly may contract with one another regarding the disposition of the assets and by such contract can make immediate distribution of the assets or the rights to the proceeds from liquidation of particular assets. In the case at bar the partners did enter into an agreement for the disposition of the various properties of the partnership. The agreement recites "the desire of the partners that an agreement be reached among them for an accounting and settlement of the affairs of said partnership." Two liquidators were therefore appointed, to have the powers and duties specifically described and no others. The cases of the partnership were divided into four schedules: those in which bills had been rendered prior to June 1, 1930; those in which bills had been rendered between June 1, 1930, and July 7, 1931, the date of dissolution; those to be considered as closed cases as of July 7, 1931; and those on which the work was yet unfinished. The Woolworth cases were listed in the second category although as pointed out in our findings of fact no bills were ever actually rendered in those cases. As to the first three classes of cases it was provided precisely what disposition should be made by the liquidators of the proceeds of collection: (1) Out-of-pocket expenses of collection should be paid (not to include any charge for the time or ordinary office expense of the partner primarily responsible for the collection thereof); (2) forwarding fees and charges for engineering

or accounting services in connection with each case should be paid in accordance with the fee contract or understanding in the particular case; (3) any balance should be distributed to the partners on fixed percentages which for the different schedules of cases represented the basis of sharing partnership profits in existence when bills in the various schedules of cases were rendered or the fees became due. Thus in the schedule of cases in which bills were rendered between June 1, 1930, and July 7, 1931, which is the schedule in which the Woolworth cases were listed, the petitioner pursuant to the agreement was entitled to receive 21 percent of each fee after the two types of expenses enumerated above were paid in connection with such fee. It does not appear that the partnership had any indebtedness other than that in connection with the individual cases provided for above so that it was able to make the agreement for the division of the proceeds of collection set out above.

Thus it appears that although the petitioner may not have obtained by mere operation of law a percentage interest in specific claims to fees upon the dissolution of the partnership, nevertheless by the contract between the partners he obtained something different from the mere claim to the undivided surplus of the corporation which might arise upon liquidation. He obtained rather the right to a percentage of the proceeds of specific fees after the enumerated expenses in the case of each fee were discharged. This right to a percentage of the proceeds of specific fees, if not the same thing as a percentage ownership of the fees themselves, was nevertheless a right acquired by the contract of July 7, 1931. It was this right which was assigned on December 18, 1931, and it therefore was not a capital asset within the statutory definition, not having been held for two years before its disposition.

Even if the right conveyed by the petitioner could be held to consist of a part of his claim to a part of the surplus of the partnership upon liquidation we do not think that is equivalent to the conveyance of a part of his "interest in a partnership" such as the conveyance of the entire interest in a partnership which was held to constitute a capital asset in the case of *Dudley T. Humphrey, supra*. Nor do we think the conveyance here can be said to constitute a "sale" as required by the statute. *Helvering* v. *Smith, supra*. In *Dudley T. Humphrey* a retiring partner sold his entire right, title, and interest in a going partnership and in the good will thereof. It appears that he had contributed one-ninth of the capital of the firm. The payment to him, therefore, represented payment for his interest in the capital and good will of the firm and was truly a sale of his partnership interest. In *Helvering* v. *Smith*, on the other hand, the retiring partner under the articles of copartnership had no

interest in the future earnings of the partnership and he had made no contribution to the capital of the partnership. The transaction whereby he obtained payment in cash for his estimated share of the proceeds of fees already earned but not yet collected was held not to constitute a "sale" of an "interest in a partnership" because he received nothing which he would not have been entitled to on a partnership accounting or which represented any purchase of his right to future earnings or his interest in the firm assets.

In the instant case the payment to the petitioner did not purport to represent any compensation for his share in good will or future earnings of the partnership. It hardly could have since the partnership had already gone out of business. Furthermore, the payment did not purport to compensate him to any extent for any capital contribution to the partnership. It does not appear that any capital contribution remained to be recovered by the petitioner. The $30,000 which had been paid out by the petitioner and Hamel in obtaining the cases turned over to the new partnership had been repaid to them within the first year of the new partnership's existence. The record does not show that any other credit had been given them for the cases in their capital accounts, but however that may be the payment here in question did not purport to compensate the petitioner therefor. The payment here was strictly for the purpose of terminating his interest in claims to specific fees. This commutation of payment on account of these fees as truly as in the case of *Helvering* v. *Smith* gave the petitioner nothing which was not already his. It is true that the payment does not represent his interest in the exact amount which might actually be received in the litigation for those fees, which might be greater or less than $50,000, but equally in *Helvering* v. *Smith* the advance payment on account of uncollected fees was necessarily a mere estimate of the possible collections. In the instant case it is clear that the petitioner at least thought that the maximum possible collection on both Woolworth claims to be $50,000 and fixed the price of his assignment at $10,500, 21 percent of that sum, the amount (less expenses) to which he would have been entitled upon collection of $50,000. We thus conclude following *Helvering* v. *Smith*, *supra*, that the petitioner's assignment did not amount to the sale of a part of his interest in a partnership.

For all of the foregoing reasons we conclude that the $10,500 received by the petitioner in 1932 was not the profits from the sale of a capital asset and therefore it constitutes ordinary income rather than capital gain.

*Decision will be entered for the respondent.*