## BLODGETT *v.* SILBERMAN ET AL.

## SILBERMAN ET AL. *v.* BLODGETT.

Nos. 190 and 191. Argued March 12, 13, 1928.—Decided April 16, 1928.

2

. *Mr. Charles E. Hughes,* with whom *Messrs. Benjamin W. Alling, Farwell Knapp, Lucius F. Robinson,* and *John F. Caskey* were on the brief, for Blodgett.

*Messrs. Abraham L. Gutman* and *Kenneth Dayton* for Silberman et al.

*Mr. Seth T. Cole* for the Tax Commission of the State of New York and the Commissioner of Corporations and Taxation of Massachusetts as *amici curiae,* by special leave of Court.

*Messrs. Wm. R. Perkins, Sol M. Stroock, Forrest Hyde,* and *Harry H. Shelton* submitted a brief as *amici curiae* on behalf of the Estate of James B. Duke, deceased, by special leave of Court.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

These two cases, which are really one, grow out of the operation of a transfer tax by the State of Connecticut. They are brought to this Court, one by certiorari, and one by writ of error. The questions presented are whether the tax on the transfer of certain parts of the large estate of Robert B. Hirsch was in violation of the due process clause of the Fourteenth Amendment to the Federal Constitution in that they were tangible property in New York and not in Connecticut. Hirsch died September 23, 1924, domiciled at Stamford, Connecticut, leaving a will with two codicils executed in accordance with the laws of both New York and Connecticut. The plaintiffs are the surviving executors of the will. Hirsch left real estate, chattels, cattle, horses and poultry in Connecticut, and also a debt due from a resident of Connecticut and a certificate of stock in a Connecticut corporation, as to all of which there is no dispute about the tax that was imposed. The great bulk of his estate, however, consisted of (1) a large interest, as general partner, appraised at $1,687,245.34, in the partnership of William Openhym & Sons, doing business in New York, and organized under the Limited Partnership Act of that State; (2) certificates of stock in New York, New Jersey and Canada corporations, appraised at $277,864.25; (3) bonds and Treasury

4

certificates of indebtedness of the United States, appraised at $615,121.17; (4) a small savings bank account in New York; (5) a life insurance policy in the Mutual Life Insurance Company of New York payable to the estate; and (6) a small amount of bank bills and coin in a deposit box in New York. All the bonds and certificates of stock at the time of the decedent's death, and for a long time prior thereto, had been physically placed and kept in safe deposit boxes in New York City and were never in Connecticut. The partnership assets consisted of real estate in New York and also in Connecticut, merchandise, chattels, credits, and other personal property. The testator bequeathed the larger part of his estate to charitable and educational corporations organized under the laws of New York and existing in that State. The executors offered the will and codicils for probate in New York. They were admitted to probate in the Surrogate's Court in the County of New York, and thereafter the executors proceeded in the settlement of the estate in New York. They have paid from the funds of the estate legacies provided in the will and codicils amounting to $299,297.45. They have also paid the debts, the federal estate tax and the New York transfer or inheritance tax, which amounted to $19,166.04. The transfer report in that court exempted the legacies bequeathed to charitable and educational institutions in accord with New York law. The executors have paid to the trustees named in the will and codicils the amount therein mentioned for the benefit of certain persons named. The executors sold the stock standing in the name of the decedent and made transfer of the same to the purchaser, and the Mutual Life Insurance Company paid to the executors the proceeds of the policy. The National City Bank of New York paid to the executors the amount of a small deposit account therein to the credit of the decedent at the time of his death.

On January 8, 1925, the executors presented to the Court of Probate, for the Stamford district of Connecticut, an exemplified copy of the will and codicils from the record of the proceedings in the Surrogate's Court in New York, and on January 15, 1925, that court received the will and codicils and accepted a bond for the executors and issued to them letters testamentary, made an order limiting the time for the presentation of claims, directed the filing of an inventory of all the property, including choses in action of the estate of the decedent, and appointed appraisers who made and filed the inventory of all the foregoing items of property belonging to the decedent at the time of his death.

On September 1, 1925, the executors filed in the Probate Court for the Stamford district, and with the tax commissioner for Connecticut, a statement under oath covering the property of the estate and the claimed deductions therefrom, all this for the purpose of determining the succession tax, if any, due the State of Connecticut. The tax commissioner thereafter filed a copy of his computation of the tax with the Probate Court, to which the executors made objection, but that court on December 4, 1925, made its order and decree approving the computation of $188,-780.58, and directed the executors to pay this amount to the State Treasurer.

From this order the plaintiff executors took an appeal to the Superior Court of Fairfield County, and then by stipulation of the parties the case was reserved for the advice and direction of the Supreme Court of Errors as to what judgment, decree or decision should be made or rendered thereon by the Superior Court.

The chief questions considered by the Supreme Court of Errors were, first, whether the interest of the decedent in the partnership of Openhym & Sons was subject to a transfer tax in Connecticut, and second, whether the bonds of the United States and certificates of its indebted-

ness were to be deemed tangible property in New York and beyond the taxing jurisdiction of the State of Connecticut. There were other questions of taxable jurisdiction over other items of the estate, but we shall consider these two first.

The Supreme Court of Errors held, first, that the interest of the decedent in the partnership was a chose in action and intangible and the transfer thereof was subject to the tax imposed by the law of the decedent's domicil; second, that the bonds and certificates of the United States were tangible property having a *situs* in New York and were not within the taxable jurisdiction of Connecticut, but were to be regarded as in the same class of tangibles as the paintings, works of art and furniture considered in the case of *Frick* v. *Pennsylvania,* 268 U. S. 473. In that case, Pennsylvania, the State of Mr. Frick's domicil, sought to impose a transfer or succession tax on the paintings and other tangible personalty, which had always been in New York City, and it was held that they had an actual *situs* in New York and that, under the Fourteenth Amendment, Pennsylvania could impose no transfer or successsion tax in respect of them. Applying what it conceived to be the principle of that case to the bonds of the United States and certificates of its indebtedness in this, the Supreme Court of Errors held that their transfer could not be taxed in Connecticut.

The Superior Court, following the advice of the Supreme Court of Errors, entered a judgment giving full effect to it. That is the final judgment in the case and it is the judgment now to be reviewed.

In No. 191 a writ of error was allowed by the Chief Justice of the Supreme Court of Errors and the Presiding Judge of the Superior Court of the State of Connecticut under Section 237(a) of the Judicial Code, Act of February 13, 1925 (ch. 229, 43 Stat. 936, 937) to the final and consolidated judgment of the Superior Court of Con-

necticut as the highest court of the State in which a decision in the suit could be had, because there was drawn in question therein the validity of chapter 190, of the Public Acts of 1923 of Connecticut, on the ground of its being repugnant to the Constitution of the United States, and especially to the Fourteenth Amendment thereof, in that the statute as construed and applied by the Superior Court levied a succession tax on the transfer and succession of property and choses in action of the decedent which were within the jurisdiction of New York and not within the jurisdiction of Connecticut, the decedent's domicil.

In No. 190, the State Tax Commissioner applied for a writ of certiorari to the same consolidated judgment, and sought a reversal of that judgment in so far as it denied to the State of Connecticut, because of the Fourteenth Amendment to the Federal Constitution, the power and right created by its statute, chapter 190 of the Public Acts of 1923, to tax the transfer of the United States bonds and certificates of indebtedness and of $287.50 in bank notes and coin, all in a safe deposit box in the City and State of New York, as not within the taxing jurisdiction of Connecticut.

Had the Supreme Court of Errors put its ruling against the validity of part of the tax on the construction of the State Constitution or statute, we could not review that ruling, because it would have involved only a question of state law, but so far as the ruling was put on the ground that the State could not impose the tax consistently with the due process of law clause of the Fourteenth Amendment, a federal question is presented which we may consider, and when we have determined the federal questions, the cause will go back to the state court for further proceedings not inconsistent with our views on such federal questions.

The Connecticut Succession and Transfer Act, Ch. 190 of the Public Acts of 1923, says in its section 1:

"All property and any interest therein owned by a resident of this state at the time of his decease, and all real estate within this state owned by a nonresident of this state at the time of his decease, which shall pass by will or inheritance under the laws of this state; and all gifts of such property by deed, grant or other conveyance, made in contemplation of the death of the grantor or donor, or intended to take effect in possession or enjoyment at or after the death of such grantor or donor, shall be subject to the tax herein prescribed."

This is a tax not upon property but upon the right or privilege of succession to the property of a deceased person as is made clear in the opinion of the Supreme Court of Errors in this and prior cases. *Silberman* v. *Blodgett,* 105 Conn. 192; *Corbin* v. *Townshend,* 92 Conn. 501; *Hopkins' Appeal,* 77 Conn. 644; *Warner* v. *Corbin,* 91 Conn. 532; *Gallup's Appeal,* 76 Conn. 617; *Nettleton's Appeal,* 76 Conn. 235. These cases are all in accord with *Knowlton* v. *Moore,* 178 U. S. 41, 47, in which it was said by this Court that:

" Taxes of this general character are universally deemed to relate, not to property *eo nomine,* but to its passage by will or by descent in case of its intestacy, as distinguished from taxes imposed on property, real or personal as such, because of its ownership and possession. In other words, the public contribution which death duties exact is predicated on the passing of property as the result of death, as distinct from a tax on property dissociated from its transmission or receipt by will, or as the result of intestacy."

The power of the State of a man's domicil to impose a tax upon the succession to, or the transfer of, his intangible property, even when the evidences of such property are outside of the State at the time of his death, has been constantly asserted by the legislatures of the various

States. The Supreme Court of Errors in its opinion in this case says that at the present time the inheritance tax laws of over four-fifths of the States impose a tax similar to that imposed by Connecticut. *Frothingham* v. *Shaw,* 175 Mass. 59; *In re Estate of Zook,* 317 Mo. 986; *In re Sherwood's Estate,* 122 Wash. 648; *Mann.* v. *Carter,* 74 N. H. 345; *People* v. *The Union Trust Company,* 255 Ill. 168; *In re Lines' Estate,* 155 Pa. 378; *In re Estate of Hodges,* 170 Cal. 492; *Commonwealth* v. *Williams' Executor,* 102 Va. 778. The same principle was recognized by this Court in *Carpenter* v. *Pennsylvania,* 17 How. 456, before the adoption of the Fourteenth Amendment, and the principle was reaffirmed thereafter in *Orr* v. *Gilman,* 183 U. S. 278; *Keeney* v. *New York,* 222 U. S. 525; and *Bullen* v. *Wisconsin,* 240 U. S. 625. In the latter case the question arose as to the power of Wisconsin to impose a tax upon the succession to certain intangible property of one of its citizens, the evidences of which were held by a trust company in Illinois upon a revocable trust at the time of his death, and the power was sustained. Reference to the record in the case shows that the property included shares of stock in Missouri, New Jersey and Illinois corporations; stock in a national bank organized under the National Banking Act; mortgage bonds and debentures issued by New Jersey, Illinois, Missouri, Utah and Kansas corporations; promissory notes of residents of Illinois and Minnesota; insurance policies issued by New York, Canadian and Wisconsin insurance companies; and money on deposit in two Illinois banks. The same principle was affirmed in the *Frick* case.

At common law the maxim "*mobilia sequuntur personam*" applied. There has been discussion and criticism of the application and enforcement of that maxim, but it is so fixed in the common law of this country and of England, in so far as it relates to intangible property, including choses in action, without regard to whether they are

evidenced in writing or otherwise and whether the papers evidencing the same are found in the State of the domicil or elsewhere, and is so fully sustained by cases in this and other courts, that it must be treated as settled in this jurisdiction whether it approve itself to legal philosophic test or not.

Further, this principle is not to be shaken by the inquiry into the question whether the transfer of such intangibles, like specialties, bonds or promissory notes, is subject to taxation in another jurisdiction. As to that we need not inquire. It is not the issue in this case. For present purposes it suffices that intangible personalty has such a *situs* at the domicil of its owner that its transfer on his death may be taxed there.

This brings us to the question whether the partnership interest of the decedent in William Openhym & Sons was a chose in action and intangible personalty. The partnership was a limited partnership organized in New York, the last agreement therefor having been executed in December, 1921. The New York partnership law then in force was Chapter 408, Laws of 1919.

Under Section 51, of this law, a partner is a co-owner with his partner of specific partnership property, holding this property as a tenant in partnership. Such tenancy confers certain rights with limitations. A partner has a right equal to that of his partners to possess specific partnership property for partnership purposes, but not otherwise. His right in specific partnership property is not assignable nor is it subject to attachment or execution upon a personal claim against him; upon his death the right to the specific property vests not in the partner's personal representative but in the surviving partner; his right in specific property is not subject to dower, curtesy, or allowance to widows, heirs or next of kin.

Section 52 specifically provides:

"A partner's interest in the partnership is his share of the profits and surplus and the same is personal property."

Under Section 73, when any partner dies and the partnership continues, his personal representative may have the value of his interest at the date of dissolution ascertained and receive as an ordinary creditor an amount equal to the value of his interest in the partnership with interest.

Under Section 98, Chapter 640, Laws of 1922, the rights of a general partner in a limited partnership, which was the interest of the decedent here when he died, are identical with those of a general partner in a general partnership. And in regard to a limited partner's interest, Section 107 of the law specifically provides:

"A limited partner's interest in the partnership is personal property."

It is very plain, therefore, that the interest of the decedent in the partnership of William Openhym & Sons was simply a right to share in what would remain of the partnership assets after its liabilities were satisfied. It was merely an interest in the surplus, a chose in action. It is an intangible and carries with it a right to an accounting.

There were among the holdings and property of the partnership, buildings and land. Although these statutes were passed after the decision in *Darrow* v. *Calkins*, 154 N. Y. 503, we have no reason for thinking that the partnership law of New York is now any different from what its Court of Appeals said it was in that case, pp. 515, 516, as follows:

" It is, however, generally conceded that the question whether partnership real estate shall be deemed absolutely converted into personalty for all purposes, or only converted *pro tanto* for the purpose of partnership equities, may be controlled by the express or implied agreement of the partners themselves, and that where by such agreement it appears that it was the intention of the partners that the lands should be treated and administered

as personalty for all purposes, effect will be given thereto. In respect to real estate purchased for partnership purposes with partnership funds and used in the prosecution of the partnership business, the English rule of ' out and out ' conversion may be regarded as properly applied on the ground of intention, even in jurisdictions which have not adopted that rule as applied to partnership real estate acquired under different circumstances and where no specific intention appeared. The investment of partnership funds in lands and chattels for the purpose of a partnership business, the fact that the two species of property are in most cases of this kind, so commingled that they can not be separated without impairing the value of each, has been deemed to justify the inference that under such circumstances the lands as well as the chattels were intended by the partners to constitute a part of the partnership stock and that both together should take the character of personalty for all purposes, and Judge Denio in *Collumb* v. *Read* expressed the opinion that to this extent the English rule of conversion prevailed here. That paramount consideration should be given to the intention of the partners when ascertained, is conceded by most of the cases."

It thus clearly appears that both under the partnership agreement and under the laws of the State of New York the interest of the partner was the right to receive a sum of money equal to his share of the net value of the partnership after a settlement, and this right to his share is a debt owing to him, a chose in action, and an intangible. We concur with the Supreme Court of Errors that as such it was subject to the transfer tax of Connecticut.

We come then to the second question, whether bonds of the United States and certificates of indebtedness of the United States deposited in a safe deposit box in New York City, and never removed from there, owned by the

decedent at the time of his death, were intangibles which come within the rule already stated.

The argument is that such bonds, payable to bearer and transferable from hand to hand, have lost their character as choses in action and have taken on the qualities of physical property, and cases are cited to indicate that they can be made the subject of execution and constitute a basis for the jurisdiction of the courts and of taxing officers of the State in which the paper upon which the evidence of the debt or obligation is written, is found, although their owner lives and dies in another State.

The Supreme Court of Errors takes this view, citing *Frick* v. *Pennsylvania,* and holds that the transfer of the United States bonds and certificates is taxable in New York where they are, and only there. The Court cites, as sustaining its conclusion that the transfer of the bonds is only taxable in New York, the case of *State Tax on Foreign-Held Bonds,* 15 Wall, 300. This case is often cited to the point that Mr. Justice Field takes as indisputable (on page 319) that a State may not tax property that is not within its jurisdiction—a matter recognized in *Frick* v. *Pennsylvania,* 268 U. S. 473, 489; *Union Refrigerator Transit Company* v. *Kentucky,* 199 U. S. 194, 202, and *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 206. The effect of some of Mr. Justice Field's language in that case, and the exact point on which the decision there turned, have since been fully discussed by this Court and qualified in *Savings & Loan Society* v. *Multnomah County,* 169 U. S. 421, 428; *New Orleans* v. *Stempel,* 175 U. S. 309, 319, 320; and *Blackstone* v. *Miller,* 188 U. S. 189, 206. The tax there held invalid was a tax imposed by a statute of Pennsylvania upon the interest due a non-resident bond holder on bonds issued by a corporation of that State. It is now settled in these later cases that the point decided in the *State Tax on*

14

*Foreign-Held Bonds* case was that the law of Pennsylvania in requiring the railroad company, which issued the bonds, to pay the state tax on them and deduct it from the interest due the non-resident owners, was as to them a law impairing the obligation of contracts under *Murray* v. *Charleston,* 96 U. S. 432. The case, therefore, is not authority for the proposition for which the Supreme Court of Errors cites it, to-wit: That such bonds are to be completely assimilated to tangible personal property. The other cases cited by the Supreme Court of Errors are *New Orleans* v. *Stempel,* 175 U. S. 309, 321, and like cases which follow it in which a State, not that of the domicil of the owner, has been held to have the right to tax bonds, promissory notes, and other written evidences of choses in action with which business is there carried on for the owner, giving them what is sometimes called " a business *situs* "; but such cases have little or no bearing on the power of the State of a decedent's domicil to tax the transfer of his bonds which we are now considering.

The question here is whether bonds, unlike other choses in action, may have a *situs* different from the owner's domicil such as will render their transfer taxable in the State of that *situs* and in only that State. We think bonds are not thus distinguishable from other choses in action. It is not enough to show that the written or printed evidence of ownership may, by the law of the State in which they are physically present, be permitted to be taken in execution or dealt with as reaching that of which they are evidence, even without the presence of the owner. While bonds often are so treated, they are nevertheless in their essence only evidences of debt. The Supreme Court of Errors expressly admits that they are choses in action. Whatever incidental qualities may be added by usage of business or by statutory provision, this characteristic remains and shows itself by the fact that

their destruction physically will not destroy the debt which they represent. They are representative and not the thing itself.

The case of *Kirtland* v. *Hotchkiss*, 100 U. S. 491, is in point. The case came to this Court from the Supreme Court of Errors of Connecticut and it involved the taxable status in that State of bonds held by one of its citizens and evidencing a debt owing to him by a citizen of Illinois. The court said, p. 498:

" The question does not seem to us to be very difficult of solution. The creditor, it is conceded, is a permanent resident within the jurisdiction of the State imposing the tax. The debt is property in his hands constituting a portion of his wealth, from which he is under the highest obligation, in common with his fellow-citizens of the same State, to contribute for the support of the government whose protection he enjoys.

" That debt, although a species of intangible property, may, for purposes of taxation, if not for all others, be regarded as situated at the domicile of the creditor. It is none the less property because its amount and maturity are set forth in a bond. That bond, wherever actually held or deposited, is only the evidence of the debt, and if destroyed, the debt—the right to demand payment of the money loaned, with the stipulated interest—remains. Nor is the debt, for the purposes of taxation, affected by the fact that it is secured by mortgage upon real estate situated in Illinois. The mortgage is but a security for the debt, and, as held in *State Tax on Foreign-held Bonds* (*supra*), the right of the creditor ' to proceed against the property mortgaged, upon a given contingency, to enforce by its sale the payment of his demand, . . . has no locality independent of the party in whom it resides. It may undoubtedly be taxed by the State when held by a resident therein,' &c. Cooley on Taxation, 15, 63, 134, 270. The debt, then, having its *situs* at the creditor's

residence, both he and it are, for the purposes of taxation, within the jurisdiction of the State."

The line which was drawn in the case of *Frick* v. *Pennsylvania, supra,* was one which was adopted from the decision of this Court in *Union Refrigerator Transit Company* v. *Kentucky,* 199 U. S. 194, and other cases cited in the same connection, where it was held that the power of taxation could not extend to tangible chattels having an actual *situs* outside the jurisdiction, although the owner was within it. It was pointed out that this is not true of debts and choses in action, which usually have a taxable *situs* at the owner's domicil. In the *Union Refrigerator* case, this Court said, p. 205:

" In this class of cases the tendency of modern authorities is to apply the maxim *mobilia sequuntur personam,* and to hold that the property may be taxed at the domicil of the owner as the real *situs* of the debt, and also, more particularly in the case of mortgages, in the State where the property is retained."

The Court again said, p. 206:

" The arguments in favor of the taxation of intangible property at the domicil of the owner have no application to tangible property. The fact that such property is visible, easily found and difficult to conceal, and the tax readily collectible, is so cogent an argument for its taxation at its *situs,* that of late there is a general consensus of opinion that it is taxable in the State where it is permanently located and employed and where it receives its entire protection, irrespective of the domicil of the owner. We have, ourselves, held in a number of cases that such property permanently located in a State other than that of its owner is taxable there. *Brown* v. *Houston,* 114 U. S. 622; *Coe* v. *Errol,* 116 U. S. 517; *Pullman's Car Co.* v. *Pennsylvania,* 141 U. S. 18; *Western Union Telegraph Company* v. *Massachusetts,* 125 U. S. 530; *Railroad Com-*

*pany* v. *Peniston,* 18 Wall. 5; *American Refrigerator Transit Company* v. *Hall,* 174 U. S. 70; *Pittsburgh Coal Company* v. *Bates,* 156 U. S. 577; *Old Dominion Steamship Company* v. *Virginia,* 198 U. S. 299."

The Court continued, p. 206:

" There are doubtless cases in the state reports announcing the principle that the ancient maxim of *mobilia sequuntur personam* still applies to personal property, and that it may be taxed at the domicil of the owner, but upon examination they all or nearly all relate to intangible property, such as stocks, bonds, notes and other choses in action. We are cited to none applying this rule to tangible property, and after a careful examination have not been able to find any wherein the question is squarely presented. . . ."

The discussion in the *Union Refrigerator* case shows what this Court meant in the *Frick* case in holding that personal property in the form of paintings and furniture having an actual *situs* in one State could not be subjected to a transfer tax in another State, and emphasizes the inference that it did not apply to anything having as its essence an indebtedness or a chose in action and could not apply to property in the form of specialties or bonds or other written evidences of indebtedness whether governmental or otherwise, even though they passed from hand to hand. The analogy between furniture and bonds cannot be complete because bonds are representative only and are not the thing represented. They are at most choses in action and intangibles.

We think therefore that the Supreme Court of Errors in extending the rule of the *Frick* case from tangible personal property, like paintings, furniture or cattle, to bonds, is not warranted, and to that extent we must reverse its conclusion in denying to Connecticut the right to tax the transfer of the bonds and Treasury certificates.

Of course this reasoning necessarily sustains the different view of that court that the transfer of certificates of stock in corporations of other States than Connecticut was taxable in the latter as the transfer of choses in action.

Among the other items is a savings bank account in New York which is certainly a chose in action and was properly treated as subject to the same rule. So, too, a life insurance policy payable to the estate was also of that character.

There was a small amount of cash, $287.48, in bank notes and coin in a safe deposit box in New York which the Supreme Court of Errors held not taxable in Connecticut. As to this, the contention on behalf of Connecticut is that it should be treated as attached to the person of the owner and subject to a transfer tax at the domicil. It is argued that it was not like coin or treasure in bulk, but like loose change, so to speak. To money of this amount usually and easily carried on the person, it is said that the doctrine of *mobilia sequuntur personam* has peculiar application in the historical derivation of the maxim. But we think that money, so definitely fixed and separated in its actual *situs* from the person of the owner as this was, is tangible property and can not be distinguished from the paintings and furniture held in the *Frick* case to be taxable only in the jurisdiction where they were.

The results thus stated lead to our reversing the judgment of the Superior Court of Connecticut, in respect to the tax on the transfer of the bonds and certificates of indebtedness of the United States, and to our affirming the judgment in other respects.

It is further contended by the executors that the proceedings in the Connecticut court and the judgment therein fail to give full faith and credit to the public acts, records and proceedings of the State of New York, and that this is in violation of the Constitution of the

United States. We do not think there is anything in this point. There is nothing in the proceedings in the Connecticut court that is inconsistent with those in the New York court. There is nothing to indicate that the New York court decided, assuming it had jurisdiction to decide, that there was no power in the State of Connecticut to impose a tax on the transfer that was taxed in Connecticut. More than that, the proceedings and judgment in New York were not such as would conclude Connecticut even with the aid of the full faith and credit clause of the Constitution. Connecticut was not a party to those proceedings or to that judgment, nor was it in privity with any one who was a party.

*Affirmed in part and reversed in part.*