Argued March 30; reversed May 9, 1933

IN RE LEONARD'S ESTATE
HAAS *v.* HOLMAN
(21 P. (2d) 795)

*C. T. Haas,* of Portland, for appellant.

*Dean H. Dickison,* of Portland (I. H. Van Winkle, Attorney General, on the brief), for respondent.

BAILEY, J. This is an appeal by C. T. Haas, administrator with the will annexed of the estate of Laura A. Leonard, deceased, from the decree of the circuit court of Oregon for Multnomah county, department of probate, fixing and determining the amount of inheritance tax due the state of Oregon on the undivided 210/700ths interest of Laura A. Leonard, deceased, in and to the undistributed estate of Hermon C. Leonard, deceased.

On December 17, 1916, Hermon C. Leonard, then a resident of Multnomah county, Oregon, died testate, leaving an estate in said county consisting of real and personal property. The provisions of said will, so far as the same are material herein, are as follows:

"To facilitate the settlement of my estate and the distribution thereof according to the provisions of this will, I devise to my executor hereinafter named, all the property, real, personal and mixed and wherever situated, of which I shall die seized or possessed, in trust, however, to sell and dispose of the same at public or private sale as he shall deem for the best interests of the estate, for cash, the proceeds thereof to constitute a portion of my estate, and to be distributed as hereinafter provided.

"My will is, and I direct, that the residue of my estate shall be divided into seven hundred (700) shares or parts of equal value, to be disposed of in the following manner, viz.:

"1st. I devise and bequeath to each of my sisters Emily C. Leonard and Laura A. Leonard, both residing in Owego, New York, two hundred and ten (210) of the said shares or parts.

"2nd. I devise and bequeath to my nephew Lewis H. Leonard, of Owego, New York, one hundred (100) of said shares or parts. * * *

"It is my will and I direct that from time to time as moneys belonging to my estate are collected by my executor, and as the proceeds of the property belonging to my estate are received by him, such portion thereof as in the judgment of my executor can safely be distributed shall be distributed and paid to the devisees hereinbefore mentioned *pro rata.* * * *

"It is my will and I do direct that my estate be administered and closed by my executor as soon after my death as it can be conveniently done, looking to the interests of the beneficiaries hereunder".

By the codicil to the will, Chester V. Dolph was nominated as the sole executor of the will. The will was admitted to probate and Mr. Dolph was named executor. Thereafter, upon the resignation of Mr. Dolph, C. T. Haas, was appointed administrator with the will annexed of the estate of Hermon C. Leonard, deceased, and trustee of said estate. This estate is still being administered in Oregon, and the trustee has not converted the real and personal property into cash.

On June 19, 1922, Laura A. Leonard, who was then a resident and inhabitant of the state of New York, died testate. Concerning her estate, it is stipulated by the parties herein: "That at the date of her death, the total value of all the property of said Laura A. Leonard, deceased, wheresoever situated, including her said distributive share of the trust and/or estate of Hermon C. Leonard, deceased, was the sum of $208,-819.23". It is further stipulated: "That the estate of Laura A. Leonard was probated in the state of New York and that said estate included in the assets of said estate as probated in the state of New York, the

210/700ths interest that said Laura A. Leonard had been bequeathed under the will of Hermon C. Leonard, deceased, and that an inheritance tax was paid to the state of New York upon said interest in said Hermon C. Leonard estate''.

On January 20, 1931, Honorable Thomas B. Kay, then state treasurer of the state of Oregon and in charge of inheritance tax collections, pursuant to § 10-621, Oregon Code 1930, instituted proceedings in Multnomah county for the issuance of ancillary letters testamentary in said estate, and thereafter such letters were issued and C. T. Haas was appointed administrator with the will annexed of said estate.

The decree from which this appeal is taken provides in part as follows:

''Now, therefore, it is hereby ordered, adjudged and decreed that at the date of her death, June 19, 1922, Laura A. Leonard was the owner of an undivided 210/700ths interest in and to the undistributed estate of Hermon C. Leonard, deceased.

''That to the extent of her said interest and ownership in and to the estate of Hermon C. Leonard, deceased, the said Laura A. Leonard was at her death, the owner of property within the state of Oregon subject to inheritance tax to the state of Oregon upon the full and true value thereof''.

The ''full and true value thereof'' was fixed at $94,028.55, and the net taxable value of the alleged Oregon estate of said Laura A. Leonard, deceased, at the sum of $83,229.20. The amount due the state of Oregon was determined to be the sum of $4,648.58, with interest thereon at the rate of 8 per cent per annum from February 19, 1923.

In making the appraisal of the alleged property in the state of Oregon belonging to the decedent, the

assets of the estate of Hermon C. Leonard on June 19, 1922, were listed, and consisted of real property appraised at $260,000 and of personal property, being mortgages, bonds and stocks, amounting to $53,428.63, or a total of $313,428.63. The value of the estate of Laura A. Leonard was arrived at by taking 210/700ths of the value of the total estate of Hermon C. Leonard on June 19, 1922.

The appellant contends that the decedent, Laura A. Leonard, at the time of her death owned no property in this state subject to the payment of inheritance tax to the state of Oregon; that her interest in the estate of her late brother, Hermon C. Leonard, was personal property, intangible in character, and subject to a succession tax in the state of her domicile; that not more than one state under the federal constitution has a right to impose and collect such a tax; and that therefore the decree of the circuit court here, imposing a tax on the interest of the decedent in and to the estate of Hermon C. Leonard, deceased, was void and in conflict with the 14th amendment to the federal constitution.

The respondent, on the other hand, contends that the decedent was, at the time of her death, the equitable owner of real and tangible personal property situated in this state and that since the situs of that property is in Oregon this state has the primary and only right to collect such a tax.

■ It therefore becomes necessary at the outset to determine the nature and character of the decedent's interest in the estate of Hermon C. Leonard, deceased. By the terms of his will all the property owned by Hermon C. Leonard was devised to his executor in trust, "to sell and dispose of the same at public or

private sale as he shall deem for the best interests of the estate,'' and the proceeds thereof were ''to constitute a portion of my estate and to be distributed as hereinafter provided''. The residue of his estate—whatever is left after paying his debts and the costs of administration—is to be divided, after being converted into cash, into 700 equal shares or parts and to be distributed to the beneficiaries according to the number of shares or parts they are to receive under the provisions of the will.

The estate of Hermon C. Leonard, deceased, was to be administered and closed as soon as the same could be conveniently done, ''looking to the interests of the beneficiaries''. The executor or trustee under the will of Hermon C. Leonard was directed to distribute to the beneficiaries from time to time such portion of moneys belonging to the estate, collected by him, and proceeds of the sale of property, as in his judgment might safely be distributed.

The time within which the executor or trustee was to convert into cash the property belonging to the Hermon C. Leonard estate was not fixed by the terms of the will, but was left to his discretion or judgment, having always in mind the best interests of the beneficiaries under the will.

The nature of the interest of the beneficiaries under the will of Hermon C. Leonard, deceased, is, we believe, well described in the case of *Anderson v. Wilson* (decided March 13, 1933), 53 S. Ct. 417, 77 L. Ed. 523. There one Richard T. Wilson, Sr., in his will directed his executors to sell and convert into personalty his entire residuary estate and divide the proceeds thereof into five equal parts. Included in the property owned by him at the time of his

death was a certain building in the city of New York, which at that time was valued at $290,000. In 1922 this property was sold by the executors for the sum of $165,000; and, after allowing for depreciation, the loss to the estate by reason of the sale amounted to $113,300.

One of the beneficiaries under the will, Richard T. Wilson, Jr., in his tax return of income for 1922 deducted one-fifth of the loss resulting from that sale, claiming that he was the equitable owner of the real property and therefore was entitled to such deduction. The will of Richard T. Wilson, Sr., did not in so many words devise the real property to his executors, and the question first discussed by the United States Supreme Court was whether or not the executors had title to the property or ''only a power in trust''. In considering this matter, the court said:

''To determine whether the loss was one suffered by the trust estate, or one suffered by the taxpayer to whom the proceeds of the sale were payable, there is need at the outset to determine the meaning of the will. The government contends, and so the courts below have held, that title to the realty was given to the executors upon a valid trust to sell and to apply the rents and profits in the interval. The representatives of the taxpayer contend that the executors had no title, but only a power in trust, and that subject to the execution of that power, the taxpayer was owner. If that be so, the loss was his and no one else's. A mere donee of a power is not the owner of an estate, nor to be classed as a juristic entity to which a loss can be attributed. We think, however, that what passed to the executors was ownership or title. True the will does not say in so many words that the residuary estate is given or devised to them, but the absence of such words is of no controlling significance when a gift or devise is the appropriate and normal medium for the attainment of purposes explicitly declared.

Robert v. Corning, 89 N. Y. 225, 237; Vernon v. Vernon, 53 N. Y. 351, 359; Tobias v. Ketchum, 32 N. Y. 319; Brewster v. Striker, 2 N. Y. 19. Nothing less than ownership will supply that medium here. The executors are charged with active and continuing duties not susceptible of fulfillment without possession and dominion. They are to collect the income and pay it over in semi-annual instalments after deducting the expenses. They are to 'hold and manage' the estate with full discretionary powers. They are even at liberty to convey it to a corporation if they believe that efficient administration will thereby be promoted. Under reiterated judgments of the highest court of New York they are more than the donees of a power. They are the repositories of title. Morse v. Morse, 85 N. Y. 53; Robert v. Corning, *supra;* Ward v. Ward, 105 N. Y. 68; Mee v. Gordon, 187 N. Y. 400; Putnam v. Lincoln Safe Deposit Co., 191 N. Y. 166, 182; Striker v. Daly, 223 N. Y. 468, 472''.

After determining that the executors were ''more than the donees of a power'' and that the ownership or title of the property had passed to them, the court proceeded to determine the extent of their ownership or title as follows:

''Another question of construction has yet to be considered. We have seen that the effect of the will was to clothe the executors with title to the land. We have yet to determine whether the title that came to them was the fee or something less. If it was the fee, the whole estate was in them, and no one else had any ownership or interest in the land as distinguished from ownership or interest in the proceeds of a sale. Delafield v. Barlow, 107 N. Y. 535; Salisbury v. Slade, 160 N. Y. 278, 290; Weintraub v. Siegel, 133 App. Div. (N. Y.) 677, 681. If it was less than the fee, there may have vested in others upon the death of the testator a future estate in remainder, which would take effect in possession on the termination of the trust. Losey v. Stanley, 147 N. Y. 560, 568; Stevenson v.

Lesley, 70 N. Y. 512; Matter of Easterly, 202 N. Y. 466, 474. Under the law of New York what passed to these executors was the title to the fee. By the will of this testator all his property, real and personal (with exceptions not now material) was to be converted into money. The five sons and daughters among whom the money was to be divided had no interest in the land, aside from a right in equity to compel the performance of the trust. Real Property Law of New York, § 100; Schenck v. Barnes, 156 N. Y. 316, 321; Melenky v. Melen, 233 N. Y. 19, 23. What was given to them was the money forthcoming from a sale. Delafield v. Barlow, Salisbury v. Slade, Weintraub v. Siegel, *supra*. Their interest in the *corpus* was that and nothing more''.

The interest of the beneficiaries is somewhat enlarged upon in the following language:

''Our answer to the inquiry as to the meaning of the will comes close to being an answer to the inquiry as to the incidence of the loss. The taxpayer has received the only legacy bequeathed to him, and received it as it was given without the abatement of a dollar. What was bequeathed was an interest in a fund to be made up when the trustees were of opinion that it would be advisable to sell. This alone was given, and this has been received. There has been no loss by the taxpayer of anything that belonged to him before the hour of the sale, for nothing was ever his until the sale had been made and the fund thereby created. * * *

''The argument will not hold that what was lost to this taxpayer was not the capital of the trust, but rather his own capital, withdrawn from his possession, but held for his account by the executors as custodians or bailiffs. His capital was in the proceeds, to the extent that they were distributed, and never in the land''.

See, also, in this connection, *Dana v. Treasurer*, 227 Mass. 562 (116 N. E. 941); *Priestley v. Treasurer*,

230 Mass. 452 (120 N. E. 100); *In re Stephenson's Estate,* 171 Wis. 452 (177 N. W. 579); 39 Cyc. 207, 211; *Matter of Mills,* 86 App. Div. 555 (67 N. Y. S. 956) affirmed 177 N. Y. 562 (69 N. E. 1127); *In re Watson's Estate,* 120 Misc. 223 (198 N. Y. S. 893); *Lawrence v. Lawrence,* 181 Ill. 248 (54 N. E. 918); *Neilson v. Lagow,* 12 How. 98 (13 L. Ed. 909).

In support of his contention that the undistributed share of Laura A. Leonard, deceased, in the estate of Hermon C. Leonard constitutes property within the jurisdiction of the state of Oregon, the state treasurer relies upon three United States Supreme Court cases and one federal circuit court case.

The first of these precedents is *Brown v. Fletcher,* 235 U. S. 589 (35 S. Ct. 154, 59 L. Ed. 374), which involved the jurisdiction of the federal court, based on an assignment by one of the beneficiaries under the will, who had assigned a part of his interest in the estate. The will provided that the sum of $50,000 should be held in trust and securely invested for this beneficiary, who was to receive the income therefrom until he reached the age of 55 years, when the principal should be paid to him. The question was whether or not his interest in and to the estate was a *chose* in action within the meaning of the federal statute as to the jurisdiction of the federal court based upon assigned *choses* in action. In this connection the court said:

"The beneficiary here had an interest in and to the property that was more than a bare right and much more than a *chose* in action. For he had an admitted and recognized fixed right to the present enjoyment of the estate with a right to the corpus itself when he reached the age of fifty-five. * * *

"The instrument by virtue of which that alienation was evidenced—whether called a deed, a bill of sale, or

an assignment—was not a *chose* in action payable to the assignee, but an evidence of the assignee's right, title, and estate in and to the property".

The opinion further held that the words "*chose* in action", as used in the statute relied upon, had reference only to a *chose* in action based on a contract and that the relationship between a trustee and the *cestui que trust* was not contractual.

In the case of *DeGanay v. Lederer,* 250 U. S. 376 (39 S. Ct. 524, 63 L. Ed. 1042), there was involved the right of the United States to collect a tax upon income from stocks, bonds and mortgages owned by a resident of France but held by her agent in this country with power to sell the same and invest the proceeds thereof. The court held that the stocks, bonds and mortgages had acquired a *situs* in the United States and that the income therefrom was taxable. The question of multiplied taxation by different states was not there under consideration.

*Hill v. Carter,* 47 Fed. (2d) 869, is substantially similar to the case of *DeGanay v. Lederer,* supra.

The decision in the case of *Maguire v. Trefry,* 253 U. S. 12 (40 S. Ct. 417, 64 L. Ed. 739), related to the question of the right of the state of Massachusetts to tax the income of a beneficiary of a trust when the trust property was held in another state.

It becomes apparent that if the interest of Laura A. Leonard, at the time of her death, in and to the estate of Hermon C. Leonard, deceased, was limited to the fund to be made up from the proceeds of the sale of the property belonging to the estate of Hermon C. Leonard, deceased, when the executor-trustee deemed it advisable to sell, and if she had no interest in his property "aside from a right in equity to compel

the performance of the trust'', then she was not the equitable owner of, nor did she have any interest in, said real property as such. Her right, therefore, to a share of the estate of her late brother, if not an interest in real property, must of necessity be classed as personal property.

Based, to a large extent, on the decision in the case of *Blackstone v. Miller,* 188 U. S. 189 (23 S. Ct. 277, 47 L. Ed. 439), many of the courts have held that both tangible personal property and intangible property might be subjected to a death transfer tax in more than one state. As an outgrowth of this doctrine, not a few of the courts resorted to the fiction of an equitable conversion in those cases wherein a resident testator directed that his real property situated in another state should be converted into money and thus distributed, and imposed a death transfer tax on his estate, measured by the total value of the property owned by him at the time of his death, regardless of whether or not the same was real or personal and regardless of where it was situated.

*Frick v. Pennsylvania,* 268 U. S. 473 (45 S. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316), definitely fixed the rule that tangible personal property could be taxed only where it had its actual *situs,* but gave countenance to the general doctrine that intangible property might be subject to a death transfer tax in more than one jurisdiction.

As a result of the decision in *Frick v. Pennsylvania,* supra, the courts practically, if not entirely, abandoned the fiction of an equitable conversion, by the will of the deceased, of real property situated in another state, in so far as the imposition of a succession tax was concerned: 61 C. J., pp. 1633, 1636; 42 A. L. R. 426, 430, note. Thenceforth the courts looked to the

character of the property at the time of the death of the testator: Wharton, Conflict of Laws (3d Ed.), § 576-d; 61 C. J. 1674, § 2513.

We are not, however, concerned here with the change in the nature of Hermon C. Leonard's property by virtue of the provisions of his will requiring that the same be sold and converted into money, in so far as his immediate beneficiaries are concerned. The property owned by Laura A. Leonard at the time of her death was not the real property owned by her late brother at the time of his death.

Let us now consider the decisions of the Supreme Court of the United States affecting the rights of more than one state to impose a death transfer tax on intangible property, and the *situs* of such property for the purposes of taxation.

In the case of *Safe Deposit & T. Co. v. Virginia*, 280 U. S. 83 (50 S. Ct. 59, 74 L. Ed. 180, 67 A. L. R. 386), it was held that intangibles such as stocks and bonds, in the hands of the legal owner of the title, could not be taxed at the domicile of the equitable owner in another state. In this connection, the court remarked:

"It would be unfortunate, perhaps amazing, if a legal fiction originally invented to prevent personalty from escaping just taxation, should compel us to accept the irrational view that the same securities were within two states at the same instant and because of this to uphold a double and oppressive assessment".

A little later, the court decided the case of *Farmers Loan Company v. Minnesota*, 280 U. S. 204 (50 S. Ct. 98, 74 L. Ed. 371, 65 A. L. R. 1000), involving the right of the state of Minnesota to impose an inheritance tax upon the transfer of negotiable bonds and certificates of indebtedness issued by the state of Minnesota and owned by a resident of New York at the time of his

death. The opinion there, applying the maxim *mobilia sequuntur personam,* held that the *situs* for taxation was New York, and after stating that intangible property, no less than tangible personalty, demanded protection against multiple taxation, concluded:

"Taxation is an intensely practical matter and laws in respect of it should be construed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences. We have determined that in general intangibles may be properly taxed at the domicile of their owner and we can find no sufficient reason for saying that they are not entitled to enjoy an immunity against taxation at more than one place similar to that accorded to tangibles. The difference between the two things, although obvious enough, seems insufficient to justify the harsh and oppressive discrimination against intangibles contended for on behalf of Minnesota".

The court, in discussing the limitation imposed on the states relative to their power to tax certain property, further said:

"In this court the presently approved doctrine is that no state may tax anything not within her jurisdiction without violating the Fourteenth Amendment. State Tax on Foreign-held Bonds, 15 Wall. 300; Union Refrig. Transit Co. v. Kentucky, 199 U. S. 194; Safe Deposit & Trust Co. v. Virginia, 280 U. S. 83. Also no state can tax the testamentary transfer of property wholly beyond her power. Rhode Island Trust Co. v. Doughton, 270 U. S. 69, or impose death duties reckoned upon the value of tangibles permanently located outside her limits. Frick v. Pennsylvania, 268 U. S. 473. These principles became definitely settled subsequent to Blackstone v. Miller and are out of harmony with the reasoning advanced to support the conclusion there announced".

In referring to *Blackstone v. Miller,* supra, and later decisions based thereon to the effect that *choses*

in action may be subject to taxation both at the debtor's domicile and the domicile of the creditor, the court stated:

"Having reconsidered the supporting arguments in the light of our more recent opinions, we are compelled to declare it [the doctrine above mentioned] untenable. Blackstone v. Miller no longer can be regarded as a correct exposition of the existing law; and to prevent misunderstanding it is definitely overruled".

In referring to the Farmers Loan Company case, the Supreme Court of the United States in *First National Bank v. Maine,* 284 U. S. 312 (52 S. Ct. 174, 76 L. Ed. 313), observed:

"Notwithstanding the registration of certain of the bonds, and notwithstanding the contention that Minnesota protects the debt, compels its payment, and permits its transfer, we concluded that the testamentary transfer was properly taxable in New York, but not also in Minnesota".

The statement last above quoted is pertinent here, as the contention is made that the beneficiaries under the will of Laura A. Leonard must look to the courts of this state for the enforcement of their rights.

The case of *Farmers Loan Company v. Minnesota,* supra, was followed by *Baldwin v. Missouri,* 281 U. S. 586 (50 S. Ct. 436, 74 L. Ed. 1056, 72 A. L. R. 1303). In referring to the latter case in *First National Bank v. Maine,* supra, the court remarked:

"There the testator, domiciled in Illinois at the time of her death, had credits for cash deposited in banks located in Missouri, and certain bonds of the United States and promissory notes—all physically within that state. Some of the notes, executed by residents of Missouri, were secured on lands in that state.

Applying the principles of the Farmers Loan Company case, we held that the *situs* of these credits, bonds and notes was at the domicile of the testator, and there passed from the dead to the living; that they were not within Missouri for taxation purposes; and that the transfer was not subject to the power of that state''.

Shortly after this, in the case of *Beidler v. South Carolina Tax Commission,* 282 U. S. 1 (51 S. Ct. 54, 75 L. Ed. 131), the court was called upon to pass on the right of the state of South Carolina to impose a tax on so much of the estate of the decedent, domiciled in Illinois, as was represented by the indebtedness to him by a South Carolina corporation. The indebtedness was for a large sum of money, due upon an open, unsecured account, entered on the books of the corporation at its place of business in South Carolina, and the court held that the transfer by death of this debt was taxable only by the state of the domicile of the decedent.

We now return to a more detailed consideration of the case of *First National Bank v. Maine,* supra, from which we have quoted with reference to other decisions of the United States Supreme Court leading up to and forming the background for the opinion in that case. The issues involved are succinctly stated by Mr. Justice Sutherland as follows:

''The question presented for our determination by this appeal is whether the state of Maine has power, under the fourteenth amendment, to impose a tax upon a transfer by death of shares of stock in a Maine corporation, forming part of the estate of a decedent, who, at the time of his death, was domiciled in the commonwealth of Massachusetts''.

After reviewing numerous decisions of the United States Supreme Court, beginning with the case of

*Blackstone v. Miller,* supra, and referring particularly to the cases already discussed herein, the opinion continues:

"It long has been settled law that real property can not be taxed, or made the basis of an inheritance tax, except by the state in which it is located. More recently it became settled that the same rule applies with respect to tangible personal property. And it now is established by the three cases last cited that certain specific kinds of intangibles, namely bonds, notes and credits, are subject to the imposition of an inheritance tax only by the domiciliary state; and this notwithstanding the bonds are registered in another state, and the notes secured upon lands located in another state, resort to whose laws may be necessary to secure payment.

"The rule of immunity from taxation by more than one state, deducible from the decisions in respect of these various and distinct kinds of property, is broader than the applications thus far made of it. In its application to death taxes, the rule rests for its justification upon the fundamental conception that the transmission from the dead to the living of a particular thing, whether corporeal or incorporeal, is an event which cannot take place in two or more states at one and the same time. In respect of tangible property, the opposite view must be rejected as connoting a physical impossibility; in the case of intangible property, it must be rejected as involving an inherent and logical self-contradiction. Due regard for the processes of correct thinking compels the conclusion that a determination fixing the local *situs* of a thing for the purpose of transferring it in one state, carries with it an implicit denial that there is a local *situs* in another state for the purpose of transferring the same thing there. The contrary conclusion as to intangible property has led to nothing but confusion and injustice by bringing about the anomalous and grossly unfair result that one kind of personal property cannot, for the purpose of imposing a transfer tax, be within the jurisdiction of more than one state at the same time, while another

kind, quite as much within the protecting reach of the fourteenth amendment, may be, at the same moment, within the taxable jurisdiction of as many as four states, and by each subjected to a tax upon its transfer by death, an event which takes place in one of the states only.

"A transfer from the dead to the living of any specific property is an event single in character and is effected under the laws, and occurs within the limits, of a particular state; and it is unreasonable, and in-compatible with a sound construction of the due process of law clause of the fourteenth amendment, to hold that jurisdiction to tax that event may be distributed among a number of states".

In this case there was a helpful dissenting opinion by Mr. Justice Stone, concurred in by Mr. Justice Holmes and Mr. Justice Brandeis. Before discussing further the majority opinion, we wish to direct attention to a statement made in the dissenting opinion which was in accord with the argument advanced by the attorney general of the state of Maine. That part of the dissenting opinion is as follows:

"The decedent, if we disregard the fiction and its attendant maxims, acquired rights and privileges with respect to a corporation created by Maine and under its control. The nature and extent of his interest are defined by the laws of Maine, and his power to secure the complete transfer of it is dependent upon them. These characteristics of corporate shares, distinguishing them in several respects from unsecured obligations to pay money, have long been explicitly recognized by this court as the source of state power to tax nonresident stockholders and as sufficient ground for its exercise".

Reverting again to the majority opinion, the court, with reference to the differentiation pointed out by the minority opinion, remarked:

"It is true, there are such differences between bonds and stocks as might justify their being placed

in separate categories for some purposes. But, plainly, they may not be so placed for the purpose of subjecting a transfer by death of the former to a tax by one state only, and a similar transfer of the latter to a tax by two or more states. Both are intangibles and both generally have been recognized as resting in contract, or, technically, as '*choses* in action'. Hawley v. Malden, 232 U. S. 1, 12; Blodgett v. Silberman, 277 U. S. 1, 14. The reciprocal inheritance statutes now in force in a preponderating number of the states of the Union make no distinction between the various classes of intangible personal property. The New York statute, for example, under that term includes 'deposits in banks, mortgages, debts, receivables, *shares of stock,* bonds, notes, credits, evidences of an interest in property, evidences of debt and *choses* in action generally.' Genl. L. N. Y., 1930, c. 710, § 1. This impressive recognition of the substantial identity of the enumerated intangibles, for purposes of death taxation, is entitled to weight''.

It will be observed that the construction of the New York statute was not involved, as the decedent was domiciled in Massachusetts and the state of Maine was attempting to impose the tax.

The court, after stating that the distinction between bonds and stocks for the purpose of taxation was more fanciful than real, and that shares of stock, like other intangibles, constitutionally can be subjected to a death transfer tax by one state only, continued thus:

''The considerations which justify the application of the fiction embodied in the maxim to death transfer taxes imposed in respect of bonds, certificates of indebtedness, notes, credits and bank deposits, apply, with substantially the same force, in respect of corporate shares of stock. And since death duties rest upon the power of the state imposing them to control the privileges of succession, the reasons which sanction the selection of the domiciliary state in the various cases first named, sanction the same selection in the

case last named. In each case, there is wanting, on the part of a state other than that of the domicile, any real taxable relationship to the event which is the subject of the tax. Ownership of shares by the stockholder and ownership of the capital by the corporation are not identical. The former is an individual interest giving the stockholder a right to a proportional part of the dividends and the effects of the corporation when dissolved, after payment of its debts. The Delaware Railroad Tax, 18 Wall. 206, 229-230; Rhode Island Trust Co. v. Doughton, 270 U. S. 69, 81; Eisner v. Macomber, 252 U. S. 189, 213-214. And this interest is an incorporeal property right which attaches to the person of the owner in the state of his domicile. The fact that the property of the corporation is situated in another state affords no ground for the imposition, by that state, of a death tax upon the transfer of the stock. Rhode Island Trust Co. v. Doughton, supra. And we are unable to find in the further fact of incorporation under the laws of such state, adequate reason for a different conclusion''.

■ In the case at bar, Laura A. Leonard, at the time of her death, had a ''right to a proportional part'' of the moneys realized from the sale of the property belonging to the estate of Hermon C. Leonard, deceased, after the debts of the decedent and the expenses of administration were paid, and her interest was, so to speak, ''an incorporeal property right'' which attached to her in the state of New York, her domicile. In many ways the rights of Laura A. Leonard to a part of the estate of Hermon C. Leonard were similar to the rights of a stockholder in and to the assets of a corporation.

The decision in *Matter of Mills*, 86 App. Div. 555 (67 N. Y. S. 956), affirmed 177 N. Y. 562 (69 N. E. 1127), is pertinent to the issue now before this court. There the will of William P. Abendroth directed that his real property be sold and that a share of the proceeds be paid to his daughter, Mrs. Mills. She, however, died

before the property was sold. A question arose as to whether her interest in her father's estate was realty or personality. In determining this, the court said:

"Mrs. Mills did not die possessed of the title to the real estate; she died possessed of a right to a distributive share in the proceeds of real estate which her father's executor was directed to sell. \* \* \*

"When she died, all that passed to her executor was the right which she had to compel her father's executor to sell the property and distribute the proceeds. The proceeds would pass directly into the hands of her executor as personalty and be distributed as such.

"The test as to whether the property was personalty or realty is, whether in the absence of a will the property would have passed under the Statute of Distribution or under the Statute of Descent".

Compare, also, *In re Watson,* 120 Misc. 223 (198 N. Y. S. 893) ; Gleason & Otis on Inheritance Taxation (4th Ed.) 471; 61 C. J. 1674, § 2513; 42 A. L. R. 434, note.

As was said in the case of *First National Bank v. Maine,* supra, "a transfer from the dead to the living of any specific property is an event single in character and is effected under the laws, and occurs within the limits, of a particular state". In the instant case the transfer from Laura A. Leonard to the beneficiaries under her will was effected by the laws of the state of New York. Had she died intestate, the laws of the state of her domicile would control the distribution of her estate here under consideration. The laws of Oregon would not, under such circumstances, have any controlling influence.

On the other hand, if her interest in the estate of Hermon C. Leonard in Oregon were realty instead of personalty, the statute of descent of this state would govern.

Following the rule announced in *First National Bank v. Maine,* supra, that ''since death duties rest upon the power of the state imposing them to control the privilege of succession, the reasons which sanction the selection of the domiciliary state in the various cases first named, sanction the same selection in the case last named,'' it naturally must be concluded that the state of New York, because it controls the succession to the right of the interest of Laura A. Leonard in the estate of Hermon C. Leonard, is the state which alone has the right to impose an inheritance tax in this instance. Compare *Bullen v. Wisconsin,* 240 U. S. 625 (36 S. Ct. 473, 60 L. Ed. 830); *Commonwealth v. Presbyterian Hospital,* 287 Pa. 49 (134 Atl. 427); *Blodgett v. Silberman,* 277 U. S. 1 (48 S. Ct. 410, 72 L. Ed. 749); *Baldwin v. Missouri,* 281 U. S. 586 (50 S. Ct. 436, 74 L. Ed. 1056, 72 A. L. R. 1303).

■ Upon the death of Laura A. Leonard it of course became necessary to probate her will in order to determine to whom the trustee should pay her share of the estate of Hermon C. Leonard, deceased. The proper jurisdiction to administer her own estate was New York, her domicile. There existed no necessity for ancillary administration in this state.

It follows from what has hereinabove been said that the state of Oregon has no right to collect an inheritance tax upon the interest of Laura A. Leonard in the estate of Hermon C. Leonard, deceased.

The decree appealed from is reversed.

BEAN and CAMPBELL, JJ., concur.

RAND, C. J., took no part in the consideration of this case.