IN RE ESTATE OF PETER MARX.

LEO J. WEGMAN, Treasurer of State, Appellant, v. LEWIS JUNGERS, Executor, Appellee.

No. 44724.

JUNE 20, 1939.

Fred D. Everett, Attorney General, and John E. Mulroney, Asst. Attorney General, for appellant.

Van Oosterhout & Kolyn, for appellee.

SAGER, J.—The facts are (except in matters not important here) stipulated by the parties, and for the purposes of this opinion we adopt, in abbreviated form, the court's finding thereof. Peter Marx, a resident of Sioux county, Iowa, died testate

in that county on January 26, 1922. His will was duly probated there and the executor paid to the treasurer of this state an inheritance tax computed upon that portion of the estate located in Iowa. Marx was the owner of certain real estate in Minnesota which the will directed the executor to sell.

On February 20, 1936, the executor instituted probate proceedings in the proper county in Minnesota and the will was admitted to probate there. Pursuant to the provisions of the will and proceedings had in Minnesota, the land was sold. After payment of costs and expenses there remained $7,452.40. This sum was distributed as follows: To a church in Minnesota, $2,000; to two Iowa legatees, $1,000; and the rest to a religious society in Illinois. The state of Minnesota exacted and the executor paid an inheritance tax on said legacies, except on that to the Minnesota church which was exempt under the laws of that state. Appellee, as executor of the Iowa estate, paid the bequests in the order required by the will, the first being the sum of $10,000 to St. Anthony's Catholic Church at Hospers, Iowa. This practically exhausted the Iowa assets. The court found that the payment of the inheritance tax in this state on Iowa property was a complete satisfaction of all that was due appellant in his capacity as treasurer of state.

It will be seen from the foregoing that the case presents one proposition: Can the state of Iowa levy and collect an inheritance tax computed on a basis which includes the value of real estate situated in Minnesota and sold in probate proceedings properly pending in the courts of the latter state? The trial court ruled in the negative and we hold rightly so.

There is a large body of law on this and cognate questions and the supreme court of the United States has had to deal with many intricate problems involving the rights of states to levy inheritance or succession taxes on property in other jurisdictions. Many of these deal with intangibles but we are not called on to review or to cite them. Neither are we concerned here with those having to do with personal property which has acquired a business situs in a state other than that of the domicile. The federal supreme court has never recognized the power of one state to tax the transfer of real estate in another jurisdiction. Prior to and after the decision of the case of Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439, there was some confusion in the authorities on the question as to how far

stocks, bonds and property of like character, not situated in the state of domicile, were subject to succession taxes. The decision announced in Farmers Loan & Trust Company v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. Ed. 371, 65 A. L. R. 1000; and in Frick v. Pennsylvania, 268 U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 315, definitely settled the question before us. See, also, Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749; and First Nat. Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. Ed. 313, 77 A. L. R. 1401.

In discussing Blackstone v. Miller, supra, the supreme court, in Farmers Loan & Trust Company case, had this to say:

"Blackstone v. Miller, supra, and certain approving opinions, lend support to the doctrine that ordinarily choses in action are subject to taxation both at the debtor's domicile and at the domicile of the creditor; that two states may tax on different and more or less inconsistent principles the same testamentary transfer of such property without conflict with the Fourteenth Amendment. The inevitable tendency of that view is to disturb good relations among the states and produce the kind of discontent expected to subside after establishment of the Union. The Federalist, No. VII. The practical effect of it has been bad; perhaps two thirds of the states have endeavored to avoid the evil by resort to reciprocal exemption laws. It has been stoutly assailed on principle. Having reconsidered the supporting arguments in the light of our more recent opinions, we are compelled to declare it untenable. Blackstone v. Miller no longer can be regarded as a correct exposition of existing law; and to prevent misunderstanding it is definitely overruled."

The case of Frick v. Pennsylvania, 268 U. S. 473, 488, 45 S. Ct. 603, 604, 69 L. Ed. 1058, 1062, 42 A. L. R. 315, lays down the same doctrine in this language:

"This precise question has not been presented to this court before, but there are many decisions dealing with cognate questions which point the way to its solution. These decisions show, first, that the exaction by a state of a tax which it is without power to impose is a taking of property without due process of law in violation of the Fourteenth Amendment; secondly, that while a state may so shape its tax laws as to reach every object which is under its jurisdiction, it cannot give them any extra-

territorial operation; and, thirdly, that, as respects tangible personal property having an actual situs in a particular state, the power to subject it to state taxation rests exclusively in that state, regardless of the domicile of the owner. (Citing cases.)''

In the Frick case, the following is quoted from Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 204, 26 S. Ct. 36, 37, 50 L. Ed. 150, 153, 4 Ann. Cas. 493:

''It is also essential to the validity of a tax that the property shall be within the territorial jurisdiction of the taxing power. Not only is the operation of state laws limited to persons and property within the boundaries of the state, but property which is wholly and exclusively within the jurisdiction of another state, receives none of the protection for which the tax is supposed to be the compensation. This rule receives its most familiar illustration in the cases of land which, to be taxable, must be within the limits of the state. Indeed, we know of no case where a legislature has assumed to impose a tax upon land within the jurisdiction of another state, much less where such action has been defended by any court.''

We recognized the binding force of these decisions in Re Estate of Smith, 209 Iowa 685, 228 N. W. 638, which, however, dealt with intangibles. Stevens, J., speaking for this court, in concise language analyzed the status of the law under the Frick and Farmers Loan & Trust Company cases.

As bearing on the question before us, see Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U. S. 412-434, 57 S. Ct. 772, 81 L. Ed. 1193, at 1200, 112 A. L. R. 293; City Bank Farmers Trust Co. v. Schnader, 293 U. S. 112-121, 55 S. Ct. 29, 79 L. Ed. 228-231; Senior v. Braden, 295 U. S. 422-441, 55 S. Ct. 800, 79 L. Ed. 1520; note to Re Frank, 96 A. L. R. 674; note to Frick v. Pennsylvania, 42 A. L. R. 327; note to Re Ellis, 86 A. L. R. 741; 11 Am. Jur., Conflict of Laws, section 169.

▮ Appellant argues that under the doctrine of equitable conversion, the proceeds of the sale of the Minnesota real estate had a situs in Iowa, which permitted the state to collect an inheritance tax thereon, but it seems scarcely necessary to say that under the decisions, to which attention has been directed, that doctrine has no validity in cases like the one before us.

The language of the Oregon court (In re Leonard's Estate,

143 Or. 141, 21 P. 2d 795-799) on this proposition accurately states our views. After referring to the various decisions made while Blackstone v. Miller, supra, was the law, that court said:

"As a result of the decision in Frick v. Com. of Pennsylvania, supra, the courts practically, if not entirely, abandoned the fiction of equitable conversion, by the will of the deceased, of real property situated in another state, in so far as the imposition of a succession tax was concerned. 61 C. J. pp. 1633, 1636; 42 A. L. R. 426, 430, note. Thenceforth the courts looked to the character of the property at the time of the death of the testator. Wharton, Conflict of Laws (3d Ed.) sec. 576d; 61 C. J. 1674, sec. 2513."

It may be added that when the real estate in Minnesota took on the form of cash as the result of sale, it still remained tangible property. Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749.

██ Nor was it brought so far as the state of Iowa is concerned within the obligation frequently mentioned in the cases, of contributing with other property in the same state to "the support of the government whose protection he enjoys." This estate discharged that debt when the executor paid in Minnesota all the succession tax that state asked for; and appellant had no standing to object to the final report filed in the probate court of Sioux county, when and after the executor had paid all the inheritance tax collectible in Iowa under applicable statutes and the limitations imposed by the Fourteenth Amendment.

The decisions rendered by the supreme court of the United States on May 29, 1939, afford no support for appellant's contentions under the facts of the case before us. See John C. Curry, as State Tax Commissioner, et al., v. George F. McCanless, as Commissioner etc. of Tennessee, 59 S. Ct. 900, 83 L. Ed. 865, and Mark Graves et al., as Commissioners of the State of New York v. Marion Brown Elliott et al., 59 S. Ct. 913, 83 L. Ed. 880.

Finding no error on the part of the trial court, its judgment should be, and it is, affirmed.—Affirmed.

MITCHELL, C. J., and BLISS, OLIVER, HAMILTON, MILLER, STIGER, RICHARDS, and HALE, JJ., concur.